## Dunn *v.* Dunn

### AND

## Jarvis *v.* McConnell.

### (*Knoxville.*    October 25, 1897.)

1. TAXATION.    *Tax lien superior to mortgage lien.*

    There exists, under our system of taxation, a lien upon mort-
    gaged lands for all taxes, State, county, and municipal, that
    is prior and superior to the mortgage lien, regardless of
    whether the taxes accrue before or after the execution of the
    mortgage.    (*Post, pp. 599–612.*)

    Acts construed: Acts 1871, Ch. 68; Acts 1889, Ch. 96, §§ 27, 76.

    Code construed: § 969 (S.); § 806 (M. & V.).

    Cases cited: State *v.* Hill, 87 Tenn., 638; Nashville *v.* Cowan,
    10 Lea, 209; Ferguson *v.* Quinn, 97 Tenn., 46; 32 N. J. Eq.,
    676; 20 N. J. Eq., 186; 38 N. J. Eq., 336; 49 N. J. Eq., 1.

2. SAME.    *Paid out of proceeds of mortgaged property.*

    The taxes due on mortgaged lands at the date of a foreclosure
    sale made under decree of Court, will be ascertained by
    proper reference, and ordered paid out of the proceeds of
    sale upon the Court's own motion, without any intervention
    of the State, county, or municipality to whom the taxes may
    be due.    (*Post, pp. 612, 613.*)

### FROM  HAMILTON  AND  KNOX.

Dunn *v.* Dunn    appealed from  Chancery  Court of
Hamilton County.    T. M. McConnell, Ch.

---

Dunn *v.* Dunn and Jarvis *v.·* McConnell.

WHEELER & McDERMOTT for J. I. Dunn.

SPURLOCK & LATEMORE for S. ' J. Dunn. ·

COOKE, SWANEY & COOKE and Attorney-general PICKLE for State.

C. R. EVANS for County.

J. H. CANTRELL for Chattanooga.

Jarvis *v.* McConnell appealed from Chancery Court of Knox County. H. B. LINDSAY, Ch.

CORNICK, SANSOM & CORNICK for Jarvis.

J. W. CALDWELL for Knoxville.

Attorney-general PICKLE for State and County.

WILKES, J. These two distinct cases involve the same questions of law, and are heard together in this Court, though originating in the Chancery Court of different counties. The question presented is the relative rights and priorities of tax liens, and the liens of mortgagees whose mortgages were in existence before the taxes were assessed and levied. The bill in each case was filed by a mortgagee to foreclose a mortgage, and apply the proceeds to the payment of the debt secured thereby. In each case there was a reference under the statute, and a report by the Master showing unpaid taxes upon the real estate involved. In the case first named, the Master reported unpaid taxes for 1892, 1893, 1895, and 1896, due to the State, the county of Hamil-

ton, and city of Chattanooga, in the aggregate amount of $357.07, and that they were a lien upon the property. Complainant, mortgagee, excepted to this report because the Master did not report that his lien was superior to that for taxes. This was over-ruled by the Chancellor. In the case last named, taxes were reported as delinquent to the State, county of Knox, and city of Knoxville, for the years 1893, 1894, 1895, and 1896, and the tax lien was reported as inferior to that of the mortgagee. This was excepted to, and the exception overruled by the Chancellor. In the case first named the mortgage was executed in 1890, proceedings to foreclose were instituted in 1894, and decree of sale made in 1896. In the latter case the mortgage was executed in 1889, proceedings to foreclose were begun in ——, and the decree of sale were had in 1896. In each case the proceeds of sale were insufficient to pay the mortgage debts. Both causes have been before the Court of Chancery Appeals; the only real question being whether the tax lien is superior to that of the mortgagee, and whether the taxes shall be paid first out of the proceeds of sale under control of the Court.

In the first case named, the Court of Chancery Appeals held that the lien of the mortgagee was superior. In the case last named, which was heard afterward, they held that the tax lien was superior, and state in their opinion that, upon a further hearing and more mature consideration, they are of opin-

Dunn *v.* Dunn and Jarvis *v.* McConnell.

ion that the latter holding is the correct one in both cases, and that the tax liens are superior, and should be first paid out of the proceeds.   Both cases are before us on appeal, and the same question is presented as was involved in the Courts below.

In the case last mentioned, the proceedings and appeal are altogether regular.   In the first case, they are somewhat irregular, and especially as to the manner in which the appeal is taken and prosecuted from the Court of Chancery Appeals.   In the case last mentioned, the mortgagee appeals, and assigns error.   In the first-named case the appeal is prayed by the defendants, but they have assigned no errors, and do not manifest any interest in the result.   Only the State, county of Hamilton, and city of Chattanooga appear; but neither of these was formally made a party in the Court below, nor in the Court of Chancery Appeals, and they have not appealed to this Court, but seek to work out their rights under the appeal prayed by the defendants.   It appears also that in that case neither the State, county, nor city filed any brief in the Court of Chancery Appeals raising the question now presented.

It appears that in the Hamilton County case the mortgagor, after executing his mortgage, sold his rights in the premises, and his vendee is before the Court.   The note secured by the mortgage was made to the Lombard Investment Company, a foreign corporation, but afterwards assigned to Mrs. Keithly, a nonresident.

Passing by much that is said as to the magnitude of the interests involved, and the great danger to the State and counties and municipalities that would accrue in the event the holding of this Court should be adverse to the superiority of the taxes as being matters which cannot control the action of this Court, we come to the single question involved in the case, which is the priorities between liens for taxes and liens of mortgagees; or, in other words, where the taxes have been assessed and levied after the execution of the mortgage, and where the proceeds of sale of the mortgaged property are under control of Court, and not sufficient to satisfy both liens, which shall be first paid out of such proceeds? Chapter 68, Acts of 1871 (M. & V. Compilation, § 806; Shannon, § 969), provides: "Whenever real estate is sold under the decree of any Court in the State, it shall be the duty of the Judge of said Court, before sale is confirmed to the purchaser, to have a reference made to the Clerk or Clerk and Master to ascertain if, upon the day of sale, there were any taxes due and unpaid which were a lien upon said real estate; and if it is found that there were taxes which were a lien upon the real estate upon the day of sale, a decree shall be entered in the cause stating the amount of taxes, and directing the Clerk and Master or Clerk to pay said taxes out of the first money collected from the sale of the said real estate."

The argument is that the force and effect of this statute is to create and fix a first lien upon all

lands, superior to all other liens from the time taxes are assessed, and to provide that when the lands are sold, the proceeds shall first be applied to the satisfaction of such taxes; that such is not only the plain provision of this statute but is the spirit and effect of all our tax laws before and since that date, so far as they relate to the lien and priority of taxes; that such has been the common understanding of the financial and other officers of the State and of the legal profession, and is in accord with the previous rulings of this Court when properly understood and applied.

On the other hand, it is insisted that this act does not make taxes a lien prior and superior to all other liens, when such other liens arise before the assessment and levy of the taxes, and that it does not attempt to settle the priorities between tax and other liens, but leaves each to its own status and order, and the direction to pay taxes out of the proceeds of sale applies only to such taxes as are a prior claim upon such lands or their proceeds in their order—as, for instance, when they were fastened upon such lands prior to, or at the time of the mortgage. Both contentions are supported by short extracts and expressions from our reported cases, taken out of their proper connection, and presenting only partial views of the real holdings of the Court.

Section 27, Ch. 96, Acts of 1889, provides as follows: "That the assessed taxes on all real estate, including the taxes on polls, and all damages and

costs accruing thereon, shall be and remain a lien upon such real estate from the tenth of January of each and every year.''

Section 76 of the same Act provides ''that no assessment shall be invalid because the number of acres or the size and dimensions of any tract, lot, or parcel of land, has not been precisely named, or the amount or valuation or tax not precisely given, nor because the property has been assessed in the name of a person who did not own the same, nor because the same was assessed to unknown owners, nor on account of any objection or informality merely technical, but all such assessments shall be good and valid.'' Substantially the same provisions were contained in the Code of 1858, and have been continued in various Acts since then, and were brought into the compilation of Milliken & Vertrees in 1884, and are repeated in the Acts of 1891 and 1895, except that in the latter Act it is provided, in addition, by Section 84, ''that hereafter the proceedings against any delinquent corporation shall be an action *in rem* purely; and it shall not be necessary, in order to make a good and valid title, to proceed personally against the parties owning the same,'' etc. Under these and similar statutes, it has been uniformly held that mere irregularities in the assessment of taxes will not release their lien—as, for instance, if the property is assessed to wrong person as owner, or to a part only of several owners.

It is conceded that the laws make taxes a lien

upon lands, and that it is within the power of the
Legislature to make such tax liens prior, in point
of right of satisfaction, to all others, but it is in-
sisted that it has not done so in express terms. In
order to make such liens paramount and prior to
all other liens, we are of opinion that it is not nec-
essary that the statutes so provide in express terms
—that is, *in totidem verbis*—but such result will fol-
low if it appears, by necessary implication from all
the Acts upon the subject, that such was the legis-
lative intent and purpose. *Howell* v. *Ellis Co.*, 32
N. J. Eq., 676; *Campbell* v. *Dewitt*, 5 C. E. Green,
186; *Pennington* v. *Mendes*, 38 N. J. Eq., 336; *Do-
remus* v. *Cameron*, 49 N. J. Eq., 1.

It is argued that under the authorities taxes are
regarded in two different lights. In the one they
are made a proceeding strictly *in rem*, and in such
cases it is conceded they fix themselves upon the
land, and the lien becomes prior to all others. In
the other they are regarded as personal debts against
the owner, to be made, in the first instance, out of
his personal property, and the land is only to be
subjected as a last resort. And when this rule pre-
vails it is said the tax lien is not prior, inasmuch
as it is not notice to the world that it is fixed,
primarily, upon the land. While our statutes and
decisions have recognized that taxes upon lands are
also personal debts against the owner, and may be,
in the first instance, collected out of his personal
estate, still, the underlying principle in our system

is that the land or *res* is the real matter upon which the tax fastens, and to which its lien attaches, and the provision in the statute that such lien shall remain upon real estate, necessarily implies that it is to fasten upon and continue to attach to the land, no matter whether it may be transferred or remain in the hands of the original owner or become incumbered.

Again, the statutes have never recognized the idea of apportioning taxes upon lands among several parties who may own interests therein—as, the vendor and vendee, mortgagor and mortgagee, judgment creditor and debtor—but the land is assessed at its full value to the party claiming and ostensibly owning the same, and as though he owned the fee simple free from all incumbrances and liens. In the case of life tenant and remaindermen the entire property is assessed to the life tenant, and he is required to pay the entire taxes.

It is true that if they become delinquent, only his life interest (prior to the Act of 1897) could be sold, but this was upon the theory that the life estate was made to bear the taxation to the full value and entire interest in the land, and no tax was imposed on the remainderman. The difference between the cases of a life tenant and remainderman and that of the mortgagor and mortgagee, is, we think, well marked. A life tenant has the entire interest in the property, legal and equitable, limited, it is true, as to time, but not as to the *quantum* of estate *in*

*præsenti*, while in the case of mortgagor and mortgagee the one has a legal and the other an equitable estate only, in the same premises and at the same time. The land and the mortgagee's interest are separate and distinct things, for while the land is taxed in the hands of the mortgagor, and to its full value, the mortgagee is taxed upon his notes and the mortgage which he holds to secure them. They are thus, for tax purposes, treated as separate and distinct properties. But there is no tax upon a life estate and at the same time upon the remainder, the entire value of the land being taxed upon the life estate. We are cited to a number of cases which are said to be controlling in this case, among them *Nashville* v. *Cowan*, 10 Lea, 209; *Cardwell* v. *Crumley*, 35 S. W. Rep., 767; *Anderson* v. *Post*, 38 S. W. Rep., 283; *State* v. *Campbell*, 41 S. W. Rep., 937; *Ferguson* v. *Quinn*, 12 Pickle, 36.

Without going into an analysis of these cases or commenting at length upon any of them, we are of opinion that in none of them is the question involved which is presented in this case. In all of the cases, except *Ferguson* v. *Quinn* and *State* v. *Campbell*, the question presented was the rights of the purchaser at tax sale, and in none of them was the question presented of the relative rights and priorities of the State, county, and city as against other lienors in funds derived from a sale of the property involved. The cases of *Ferguson* v. *Quinn* and *State* v. *Campbell* presented the liability of the life

tenant and remainderman for taxes *inter sese*, and the right of the State to sell the remainder estate for taxes accrued during the existence of the life tenancy. While it is well settled that a purchaser at tax sale gets only a derivative title, this still does not determine the question here involved as to how the proceeds shall be divided between the tax and other liens on the property, when it is sold under Court proceedings.

We do not consider the cases to which we have been cited as controlling, nor to any material extent bearing on, this case. Here the rights of the purchaser at tax sale are not involved. It is purely a question of the appropriation of the funds received from a sale of the property not made in this instance under a tax proceeding, but under a proceeding when the entire interest in the property is sold in accord with the provisions and under the terms of a mortgage. The question of the application of the proceeds is the only question involved.

The assessment and collection of taxes is one of the most important functions of government. It is the theory of our system that all property must pay taxes unless exempted, and that taxes shall be uniform. It is certainly not a proper construction of either the letter or spirit of our laws relating to taxation that the State must advise itself of all incumbrances on land, whether mortgages, judgment, or other liens, and have regard to these incumbrances in laying its taxes, apportioning them be-

tween the creditor and debtor. On the contrary, the theory is, and · has always been, that the State will lay its taxes upon the land in the hands of the apparent owner, and collect them, if necessary, from the land.

Construing the Acts of 1871, Ch. 68 (M. & V., § 806), before referred ·to; this Court, in *State* v. *Hill*, 3 Pickle, 638, said: "Taxes are by this Act made a prior charge and lien upon the thing taxed, and override all liens, mortgages, and incumbrances of whatever kind there might ·be upon the property, for the Act expressly requires that the taxes shall be paid out of the first money collected from the sale of real estate."

While this latter case is not · directly, it is more nearly in point in principle than the other cases cited. It was a bill filed to collect back or delinquent taxes. Mrs. Hill had bought a lot at chancery sale, and paid the purchase money. This purchase money was distributed without paying the taxes on the land, and the Court held that the taxes on the land were a specific lien upon it when it was sold, and that holding was affirmed by the Court. Mrs. Hill insisted that no reference having been had under the Act of 1871, the lien upon the land was transferred to the purchase money. This Court held, however, that if the reference was not had nor report made and taxes paid as that Act provides, the purchaser took it subject to the taxes, and the lien

15 P—39

continued, notwithstanding the sale and payment of. the purchase money by the purchaser.

We are of opinion that the very force and effect of this statute of 1871 is that whenever the aid of the Courts of the State is invoked to enforce the liens of the mortgagee or for any other purpose requiring a sale of the land, the Court will, as an incident to granting relief, require that all taxes on the property sought to be sold shall be discharged, and that they shall be first paid out of the proceeds of sale.

It follows that all mortgages taken upon land are taken subject to this law, and the stipulations of this Act are virtually incorporated into every mortgage, and made a part of its terms. We do not mean to say that the mortgagee can escape such a result by foreclosing his mortgage without the aid of a Court. Such case is not before us. But we do not see why a purchaser at such private sale would not take the property subject to all assessed and unpaid taxes. But we are here dealing with a case which is directly and explicitly within the terms of the statute, and its provisions must be enforced. Nor do we think the Act contemplates only the taxes which were delinquent when the mortgage was made, but it clearly refers to and embraces all that are due and owing at the time the sale is made, no matter when assessed. This construction operates with no hardship upon a mortgagee. He can, in his mortgage, provide that taxes shall be kept down

by the mortgagor, under pain of foreclosure, and it is stated in argument that such provision is common, and is contained in the mortgage in the first-named case.    How this is we cannot tell.    The mortgage is not before us, only so much of the record being brought up as was deemed material to present the questions.    On a contrary holding, it is easy to see how much of the real estate of the country may be covered up from taxes by means of mortgages, and, in case of foreign creditors, not only the land, but also the debts held by the mortgagee may escape taxation altogether.    In the case of *Nashville* v. *Cowan*, the only question involved was whether a purchaser at tax sale made for the taxes of 1877 took it free of all other taxes which had been assessed, and were a lien upon it.    The contest in the Court below was between the city of Nashville, the taxpayer, and the purchaser at the sale, for the taxes of 1877.    The contest in this Court was between the city and Brien, the purchaser at tax sale, and the Court held that he took the land under the sale incumbered with the taxes which were upon it. The case of *Cardwell* v. *Crumley* is a decision by the Court of Chancery Appeals, reported in 35 S. W. Rep., 767, and it simply holds that a purchaser at tax sale of land assessed to a vendor and sold as his land, cannot defend against the vendor, who had a prior lien upon the land and who was not made a party to the tax proceeding.    In the result reached in that case this Court concurred.    *An-*

*derson* v. *Post*, also an opinion of the Court of Chancery Appeals, reported in 38 S. W. Rep., 283, was a case of an assessment void for vital irregularities and insufficiency, and was affirmed upon that ground by this Court. The cases of *Ferguson* v. *Quinn* and *State* v. *Campbell* have already been referred to as not in point. None of these cases present the question involved in the present litigation, and the facts in these cases are entirely dissimilar to those in the cases mentioned.

It is said that in the case of *Dunn* v. *Dunn*, the Hamilton County case, that this Court has no jurisdiction to pass upon the questions involved, inasmuch as only the defendants, Dunn and wife, have appealed and assigned no errors, and the State and county and city have not appealed, and have never been made parties, and thus the case is not before us. The statute of 1871, before referred to, clearly contemplates that in all cases of sales of land by the Court there shall be a reference and decree for unpaid taxes. The reference was made in this case, and the question presented informally, and a report was made and acted upon, and confirmed by the Court and a decree rendered. An exception was made, in the Court below, as was stated on its face, for the purpose of having the Court pass upon the legal question. It would then have been proper for the State, county, and city, pursuing a correct practice, to make themselves parties to the suit to have their rights determined, and to be better enabled to

Dunn *v.* Dunn and Jarvis *v.* McConnell.

present the matter in the appellate Court.    The question is, however, properly and accurately presented in the Knox County case.    The Hamilton County case is before us on the appeal of the defendants, so that jurisdiction attaches, and the Court, seeing from the record that taxes are due upon the property sold, will make the orders necessary for their payment.

The causes will be remanded to the Courts below, to the end that the taxes may be paid first out of the funds in Court, next the costs of the causes will be paid, and the remainder of the funds will be distributed as the Courts below may direct.