Lee *v.* Harrison *et al.*

(*Knoxville,* September Term, 1953.)

Opinion filed February 11, 1954.

Petition to Rehear denied April 16, 1954.

604

Solon L. Robinson, of Pikeville, and Lewis S. Pope, of Nashville, for complainant.

Keyes, Redmond & Swafford, of Crossville, for defendants.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The complainant, Edgar Allen Lee, Sr., filed his original bill in the Chancery Court of Bledsoe County against the above named defendants, claiming title to certain lands "lying partly in Bledsoe County and partly in Cumberland County (describing it by metes and bounds) containing 5000 acres" with certain specific lands excluded the several alleged owners being named in the bill. The number of lands thus excluded consists of 25 or more separate tracts of land. The complainant alleges that "he is in the actual, open, peaceable and exclusive possession by fenced, cleared, and cultivated fields and enclosures and that he and those through whom he claims have been in the actual, open, public and exclusive possession of the land hereinafter described for more than 30 continuous years." Following the description above re-

ferred to the bill charges that the property involved constitutes "a part of Grants 2745 to William Pegg and Grant 3701 to Wiley Skillern, which Grants were originally for 5000 acres each." The bill further alleges that "the defendant Tenn-Cumberland Corporation has recently obtained a deed to said land which was executed by W. F. Seals and wife bearing date of January 9, 1947, and recorded January 9, 1947, in the Register's Office of Bledsoe County, which deed it is charged is champertous and void and constitutes a cloud on title." It charges that "the defendant G. E. Harrison is claiming title to the land through Pocahontas & Sewanee Coal & Iron Co., a corporation which went into bankruptcy August 16, 1923"; that this claim is also void.

The bill further charges that the "defendants are threatening to enter upon the land and make enclosures which threatened acts further complicate and injure complainant's title and right of possession."

The complainant claims title to said lands "by deraigning title to the Grants aforesaid and by adverse possession under a recorded assurance of title for more than 30 years."

The defendant Harrison filed an answer disclaiming any interest in any lands lying within Grant 2745; but puts in issue all material averments of the bill with respect to complainant's title and possession of lands within Grant 3701, and averring that he is the owner and holder of the recorded title to Grant 3701.

The original bill and answer of the defendant Harrison were filed January 1, 1951, and February 3, 1951, respectively. A pro confesso was taken against the Tenn-Cumberland Corporation and the cause proceeded to proof. During the taking of proof the complainant

sought leave, which was granted, to file a supplemental bill, October 23, 1951, the effect of which was to allege the existence of a tax deed which was filed as an exhibit to the testimony offered by the defendant Harrison. This tax deed is claimed to be void for many reasons, and complainant asks that it be declared void and a cloud on title.

The defendant Harrison filed a demurrer and answer to the supplemental bill which the Chancellor overruled. At the March term of court, 1952, the defendant Tenn-Cumberland Corporation's motion to set aside the pro confesso was sustained. Whereupon the defendants filed an answer and demurrer to both the original and supplemental bill. Both of the demurrers to the supplemental bill are identical.

The foregoing statement of the case is in a large measure the findings of the Chancellor and is correct.

We deem it unnecessary to discuss the sufficiency of the pleadings other than to say that they present the following questions: (1) the alleged invalidity of tax deeds held by the defendants, and (2) whether or not the defendant's plea of Code Section 1611 is applicable to this controversy.

The record discloses the following additional finding of facts by the Chancellor. The complainant put in evidence his chain of title to portions of Grants 2745 and 3701. The former was the "William Pegg Grant" from the State of Tennessee, bearing date of November 19, 1832, for 5,000 acres of land and described in the bill; the latter, known as the "Wiley Skillern Grant" from the State of Tennessee, bearing date of February 10, 1835, and containing 5,000 acres and described in the bill.

The defendant Harrison put in evidence his chain of

title to that portion of Grant 3701, claimed by complainant. His claim commences with a Tax Deed bearing date of May 11, 1882, which was executed by J. P. England, trustee for Cumberland County to Cicero B. Duncan and purports to convey title to 14 different tracts, including the Wiley Skillern 5,000 acre Grant or tract of land for taxes for the years 1878-1879. In addition to the foregoing the defendant Harrison put in evidence a deed from the State of Tennessee to W. F. Seals purporting to convey the land involved in this suit and which is the deed referred to in the supplemental bill and claimed to be illegal and void.

The defendant Tenn-Cumberland Corporation offered its charter in evidence, and while complainant insisted that it was void, the Chancellor properly held it was a de facto corporation and only the State could attack its validity by proceedings in the nature of a quo warranto. See citations under Section 3716 of Williams' Code.

The Tenn-Cumberland Corporation also put in evidence its tax title which consists of a deed by the Clerk and Master of the Chancery Court of Bledsoe County to the State of Tennessee and a deed from the State to W. F. Seals, and a deed from W. F. Seals to the defendant corporation.

The Chancellor, in his finding of the foregoing facts, concludes by stating, "These deeds purport to convey the lands involved in this controversy, or at least that is the insistence of the defendants. If this insistence is good, complainant must fail."

The learned Chancellor held that the foregoing claim of title under the several tax deeds could only be sustained upon the theory that there was a vestiture of title

as held in *Tennessee Marble & Brick Co.* v. *Young*, 179 Tenn. 116, 163 S. W. (2d) 71. It was his well considered opinion that the deeds were invalid because (1) of illegal assessment, (2) for lack of notice, and (3) Code Section 1611 had no application.

The basis of his holding that the assessment for taxes was illegal was the failure of any proper description of the land in the State's suit to collect delinquent taxes, with particular reference to the cause in confirming the sale in the Chancery Court of Bledsoe County in said cause No. 1106 for the years 1928 to 1938, inclusive, and bid in by the State for the sum of $10,053.15, representing the amount of tax liens. The foregoing tax deed purports to convey title to the lands in controversy. The said lands were later (December 10, 1946) sold by the State to W. F. Seals for $3,000, representing a complete settlement of the taxes for the years 1928 through 1945. Thereafter on January 9, 1947, Seals sold and conveyed by deed to Tenn-Cumberland Corporation what purports to be a fee simple title to 5,000 acre Grants Nos. 2745 and 3701.

The Chancellor further found that in the State tax suit filed in Bledsoe County (Cause 1106) the two Grants 2745 and 3701 were assessed in the name of "Pocahontas & Sewanee Coal Co. and Roy Rose", referring to the deed by R. B. Schoolfield, trustee, to Roy Rose and bearing date of December 15, 1923. The decree recites that Rose was made a party defendant by publication. But, says the Chancellor, "the record reveals that publication was not made for Roy Rose and that he was without actual or constructive notice of the suit. Thus, as to him the decree of the Chancery Court divesting title out of him and vesting title in the State of Tennessee was, therefore, void."

The Chancellor and Court of Appeals concurred in find-

ing that the lands now in controversy were assessed in the name of Pocahontas & Sewanee Coal Co. and Roy Rose and the same was sold by decree of the Chancery Court of Bledsoe County, and was later sold by the State to W. F. Seals. This disposes of petitioner's contention that it is not the same land that is now in dispute.

The Chancellor held that the tax deeds of the defendants were void for inadequate description of the land in the State's tax suit and for lack of notice to Rose, and that Code Section 1611, pleaded by the defendants had no application. The said Code Section reads as follows:

"No suit shall be commenced in any court of this state to invalidate any tax title to land until the party suing shall have paid or tendered to the clerk of the court where suit is brought the amount of the bid and all taxes subsequently accrued, with interest and charges as herein provided."

The reason given by the Chancellor for holding the foregoing Code Section inapplicable was, to use his own language, "if the assessment was void, no taxes were owing, and if none were owing there could be none paid or tendered." The original bill was sustained and the relief as prayed for granted.

The cause was appealed to the Court of Appeals sitting at Knoxville and that court disagreed with the Chancellor upon the determinative questions, resulting in a petition for certiorari to this Court. The disagreements, which will be pointed out, are made the basis for assignments of error. One of the errors complained of is that the Court of Appeals erred in holding that *Tennessee Marble & Brick Co.* v. *Young,* supra, had no application; that it was also error to hold that Code Section 1611, supra, was applicable to the present controversy.

612

The attack made upon the decree of the Chancery Court of Bledsoe County wherein title to the lands here involved was divested out of the taxpayer and vested in the State is without merit. The Court of Appeals was correct in holding that it was not a void decree but it was a vestiture of title even though it may have been a defective title. Since the taxpayer had notice of the proceedings, it could not be attacked in a collateral proceeding by complainant, who paid nothing and tendered nothing to the clerk of the court as provided in Code Section 1611.

In *Esch* v. *Wilcox*, 181 Tenn. 165, 178 S. W. (2d) 770, 772, opinion by MR. JUSTICE GAILOR, it was held that the proceedings for the collection of taxes "are not subject to be reopened and reviewed in a collateral proceeding", and furthermore it is a "proceeding *in rem*, and the parties are bound by actual or constructive notice." Code 1932, Sec. 1332. Moreover we indulge the presumption favoring the regularity of the proceeding. *Jones* v. *Sharp*, 56 Tenn. 660; *Puckett* v. *Jenkins*, 61 Tenn. 484. While it is true the record fails to show constructive notice upon Rose, a defendant nontaxpayer, there is no showing that he did not have actual notice. He did not testify and his failure to testify is not explained. He was available because the record shows he executed a quitclaim deed to the complainant for the sum of $500 which is relied on by complainant as a conveyance of title. It appears from the record that the complainant undertook to confer upon himself some semblance of "a registered color of title" by conveying the land to his wife "for love and affection", who two days thereafter reconveyed to him the same land "for love and affection". This added nothing whatever to complainant's claim of title by adverse possession. The parties knew that the State had previously

conveyed a fee simple title to W. F. Seals for $3,000, which was a compromise settlement of the taxes due.

██ ██ We find no merit in complainant's contention, as appears from the testimony of his counsel, that the land in question had never been assessed to Rose. Considering, as we do, that the tax suit was "a proceeding *in rem*", Rose, the nontaxpayer for over twenty years, could not regain title and possession without first tendering the amount of taxes due; and his vendee, the complainant herein, could not do so, since his right rises no higher than his vendor. The case of *Tennessee Marble & Brick Co.* v. *Young* has no application since in that case it was held that the decree of sale was void because the Chancery Court under the Moratorium Act of 1935 was without any legal authority to confirm a sale of the land. Moreover it was further held that complainant in seeking to set aside the tax deed and sale of complainant's property was entitled to relief "by paying into court the amount of taxes due from it, together with interest and penalty."

The record shows that the value of this property for taxation ranges from $40,000 in 1928 to $24,660 in 1942. The supplemental bill charges that it was not assessed to the owner, Roy Rose, or "in the name of anyone". There is no proof that the complainant or his predecessor, Rose, ever paid any taxes for a period of over twenty years, and there is no offer by complainant to pay any part of the taxes due. In dealing with this situation the Court of Appeals made the following timely observation:

"We think the complainant's position is wholly inequitable. He in effect says, 'this land has escaped taxation for all these years; I have taken a quit claim

from the owner under some sort of an arrangement I do not choose to divulge; and I want the State, to whom I have paid nothing and owe nothing, to exercise one of the highest equitable functions, namely, the removal of alleged clouds upon my title.' ''

Conceding that there is some merit in complainant's contention that there was as a matter of law a failure of description of the property, or inadequate description, we think Code Section 1611 is applicable and properly pleaded. We concur in the following statement by the Court of Appeals: ''The statute contemplates that the attack will be based upon some imperfection in the tax proceeding. *Why should it not apply to an inadequate description as much as to any other defect?''* (Emphasis ours.)

As a further reason for affirming the Court of Appeals, we think Section 3, Chapter 28 of the Public Acts of 1947, and which appears in Supplement to the Official Code of 1950, as Section 8585.1, is applicable to the present controversy. It reads as follows:

*''Right of action lost by failure to pay taxes for twenty years.*—Any person having any claim to real estate or land of any kind, or to any legal or equitable interest therein, the same having been subject to assessment for state and county taxes, who and those through whom he claims have failed to have the same assessed and to pay any state and county taxes thereon for a period of more than twenty years, shall be forever barred from bringing any action in law or in equity to recover the same, or to recover any rents or profits therefrom in any of the courts of this state; provided, that this section shall not apply to persons under twenty-one years of age or to persons

of unsound mind if suit shall be brought by them, or any one claiming through them, within three years after the removal of such disability.''

The writ of certiorari is denied.

## On Petition to Rehear

This case is again before us on petition to rehear by Edgar Allen Lee, Sr., complaining that the Court erred in denying certiorari. The insistence is renewed that the decree of sale of the property was void, and being void Code Section 1611 had no application. The petitioner does not complain that Chapter 28, Section 3 of the Public Acts of 1947, is erroneously applied, but insists that the Court was without jurisdiction and authority to consider it, due to the fact that the respondents had failed to file a counter-petition for certiorari seeking a review of the Court of Appeals' refusal to apply it.

Preliminary to the citation of cases to support the insistence that the decree of sale of the property for collection of delinquent taxes, it is argued at length that error was committed in holding that the Chancellor and Court of Appeals concurred in finding that the property referred to in the decree was the same property that is involved in this litigation. There is no merit in this insistence since the record clearly shows that both courts treated it as being the same. Moreover the original bill charges that the alleged void decree of sale ''is a cloud upon complainant's title''. The Court of Appeals in taking note of this contention was prompted to say: ''It seems to us that complainant admits, by implication at least, that the property described in the bill is the same property held by defendants under the tax title which he attacks. *Otherwise, there would be no need to remove it*

*as a cloud upon his title.''* (Emphasis ours.) The foregoing statement is so very true that a further discussion of the complaint is unnecessary.

Turning now to the petitioner's contention that the decree of sale was void for lack of description of the property and that the tax deeds of defendants are void, we find that the petition and supporting brief are a reargument of the question. It should be denied for that reason alone as not conforming to Rule 32. But we are pleased to make a response for the purpose of distinguishing the cases from the instant case, and to assure the counsel for petitioner that we have not intended to announce a rule which runs counter to the general principle that a tax assessment is ''void for vital irregularities and insufficiency,'' and a tax sale thereunder is void. *Dunn* v. *Dunn,* 99 Tenn. 598, 42 S. W. 259, 263; *Mayor and Aldermen of Morristown* v. *King,* 79 Tenn. 669; and cases cited. In the Dunn case the only question decided was whether the State's lien for taxes was superior to that of the mortgagee. In *Mayor and Aldermen of Morristown* v. *King* there was an inadequate description of the property. Several lots, that were not contiguous, were assessed as a whole. The complainant became the purchaser at a sale which was confirmed. Following this the complainant undertook to enforce his lien against one of the lots which had been sold to one O. C. King, but conveyed title to his wife for life and remainder to his children who were all minors. It plainly appears that the assessment in the latter case, being invalid because of *''vital irregularities''*, was highly prejudicial to the purchaser of the property. No question was made as to the application of Code Section 1611, referred to by us in the original opinion. Moreover the

owners of the property in the case at bar, at the time it was sold for taxes, were not prejudiced by any alleged inadequacy of descriptions. Nor does it appear that prospective buyers were misled. Moreover no complaint was made as to the right of the State to enforce a sale of the property, or any irregularity in the proceeding, except that one Roy Rose, a defendant in the tax suit, was not made a party by publication, and there was no service of process upon him. This complaint was fully discussed in the original opinion and need not again be reviewed. There is no merit in the contention that he, Rose, was not given notice of the confirmation of the sale, and hence the chamber's decree of Chancellor Stewart was void. It suffices to say that the decree of sale, as well as the chamber's decree, is presumed to be valid in all respects. The burden of impeachment of a judicial sale of land rests upon him who assails it. See authorities cited in the original opinion. There is no duty devolving upon the present holder of the deed herein assailed, to wit Tennessee-Cumberland Corporation, to prove that the assessment was valid, although the petitioner seems to be of opinion that it does. ''The presumption that an assessment of taxes is valid, regular and correct will stand until overcome by satisfactory evidence to the contrary.'' *State ex rel.* v. *Collier,* 160 Tenn. 403, 23 S. W. (2d) 897.

The tax suit, assailed in this cause, was a proceeding against the land, i. e. an action *in rem.* The State did not seek a personal judgment or decree against any delinquent taxpayer. Speaking to the question of the importance of notice and service of process upon the delinquent taxpayer, it is said in the Collier case, supra, 160 Tenn. at page 436, 23 S. W. (2d) at page 908:

''In an action *in rem* the court acquires jurisdic-

tion of the property by its seizure and all those having an interest in the property are deemed to have constructive notice of its seizure and are considered parties to the suit. *State ex. rel. Revenue Agent* v. *Patterson,* supra, [155 Tenn. 169, 290 S. W. 973] citing The Mary, 9 Cranch, 126, 3 L.Ed. 678, and Freeman on Judgments, (5th Ed.), Sec. 1543. See, also, Freeman on Judgments, Sec. 1517, et seq., and *Tyler* v. *Judges of Court of Registration,* 175 Mass. 71, 55 N. E. 812, 51 L. R. A., 433.

"Whether or not seizure of the property alone, without further notice, authorizes the court to proceed to judgment is a question upon which there is a conflict of authority. See cases collected in a note 50 L.R.A., 597.

＊　　　＊　　　＊　　　＊　　　＊　　　＊

"Our tax laws appear to be based on the views of the Supreme Court of the United States just quoted. The notification or monition provided by chapter 115, Sec. 2, of the Acts of 1921, is that 'said suit shall be conducted in accordance with the practice in Courts of Chancery in this State.' That is, a summons shall issue as to those named as defendants or publication shall be made for them, as the circumstances indicate. *Those interested, however, are not made parties by the service of process or by publication.* They are parties before either of these things are done—made such by the seizure of property in which they had an interest. The function of process in cases like the one before us is fundamentally different from that of process essential to jurisdiction in an action *in personam. Thompson* v. *The Julius D. Morton,* 2 Ohio St., [26] 30, 59 Am. Dec. 658." (Em-

phasis supplied.) Pages 437, 438 of 160 Tenn., page 908 of 23 S. W. (2d) of Collier case, supra.

■ The petitioner makes no claim that the owner at the time of sale did not know of this suit in the Chancery Court, but is content to insist that there was no service of process, actual or constructive. We think under our authorities the doctrine of *lis pendens* applies to property owners who are delinquent in the payment of taxes, and the action is against their property. In the present case the defense of *laches* in bringing the suit is not raised. The record discloses that Roy Rose made no claim of lack of notice of the proceedings in the Chancery Court, including the chamber's decree confirming the sale, notwithstanding he was available to testify in the instant case and failed to do so. His vendee, the petitioner herein, stands on no higher ground.

■ The contention made in support of petitioner's case that the sale of the property by the State to W. F. Seals, and the latter's deed of conveyance to the defendant Tennessee-Cumberland Corporation, is champertous is wholly without merit. Our champerty laws have no application to judicial sales of property, or deeds of conveyance, wherein the State is the vendor.

The original owner of these lands paid no taxes for more than twenty years. The petitioner, like his predecessor in title, Roy Rose, has paid no taxes, and filed this suit without tendering the amount of taxes due as required by Code Section 1611. The case of *Tennessee Marble & Brick Co.* v. *Young,* 179 Tenn. 116, 163 S.W. (2d) 71, relied on by petitioner was considered and distinguished in the original opinion from the case at bar. Complainant in that case tendered into court the total amount of taxes due.

620

■ Finally the petitioner insists that we committed error in citing and quoting Section 3 of Chapter 28 of the Public Acts of 1947, as supporting the opinion of the Court of Appeals. The counsel say in urging the foregoing assignment: "The Supreme Court has no jurisdiction *to correct or even consider an error of the Court of Appeals,* either of omission or commission and cannot review the action of the Court of Appeals, or lack of action, except by a petition for certiorari." We pretermit consideration of Chapter 20 of the Public Acts of 1947, which expressly provides that a respondent may assign errors without filing a petition for certiorari. But aside from this statute we hold the assignment to be without merit because we have not undertaken to correct any error in the final decree of the Court of Appeals, or modify it in any particular. We know of no decision, or rule of Court, which precludes us from citing authorities which support the conclusions reached by the Court of Appeals and which had been overlooked by that court. The cases cited by counsel have no application whatever.

The petition to rehear is denied.

## On Second Petition to Rehear

The counsel for Edgar Allen Lee, Sr., made oral application to the Chief Justice at his chambers for leave to file a second petition to rehear in this case. Pending consideration of the application the counsel appeared in open Court at Knoxville and presented his petition, with supporting brief. While there has not been a formal compliance with the rules of the Court, we will nevertheless make response to the petition insofar as it attempts, for the first time, to question the constitutionality of Section 3 of Chapter 28 of the Public Acts of 1947.

In this application for leave to file another petition to rehear, the first having been denied, the counsel undertakes to reargue every issue raised in the original petition for certiorari, and the first petition to rehear. It is again reargued that the decree of sale of the property to satisfy the State's lien for delinquent taxes is void because of inadequate description of the property, the contention being made that there was no description sufficient to satisfy the law's requirements. The same authorities are cited as in the original petition as if they had never been cited and considered by the Court.

Another issue reargued is that the delinquent taxpayer, who was a defendant in the tax suit, had no notice that sale would be confirmed at Chambers of the Chancellor. We discussed this issue at length as shown by our response to the first petition to rehear.

The petitioner again insists, as if it too had been overlooked, that Code Section 1611 is not applicable to the case at bar, and that this Court and the Court of Appeals erred in holding that it was applicable and controlling.

We think we have made adequate response to these issues and respectfully decline to make any further response. A petition to rehear is never granted to enable counsel to reargue issues that have been fully considered by the Court. *Louisville & N. R. Co.* v. *United States Fidelity & Guaranty Co.,* 125 Tenn. 658, 148 S.W. 671.

The only new question that is presented in this second petition is, as follows:

"We earnestly insist that the said tax proceeding of *State ex rel.* v. *Austin* is void as against the rights of Roy Rose, had no effect upon his title, and that his conveyance to this petitioner vested petitioner with valid title to the land involved in this case be-

cause it violated Sec. 8, Art. 1 of the Constitution of Tennessee, providing that no man shall be deprived of his property but by judgment of his peers or the law of the land, and violated the 14th Amendment to the Constitution of the United States, providing that no man shall be deprived of his property except by due process of law."

The foregoing insistence is based solely upon the assumption that every step taken in the tax suit was void. The petitioner elects to ignore the fact that Rose has never in any proceeding attacked the delinquent tax sale; has never claimed any lack of notice of the suit, or notice that the sale would be confirmed by the Chancellor on a day certain; has never paid any taxes upon the land in question for at least twenty-five (25) years prior to the sale. He executed his quitclaim deed to the property to petitioner, which was in and of itself notice that the petitioner was buying the lands subject to all the imperfections complained of in the original bill. The petitioner stands upon no higher ground than his vendor Rose.

Coming now to the alleged invalidity of Chapter 28 of the Public Acts of 1947, and petitioner's contention that he is, by this proceeding and especially the opinion of this Court and the Court of Appeals, being deprived of his property without *due process*. The petitioner proceeds upon the theory that Rose conveyed to him a valid and subsisting title and that the State's deed to W. F. Seals and the latter's deed to Tenn-Cumberland Corporation was a cloud upon Rose's title and that as a matter of law it was a cloud on petitioner's title. The plain fallacy of this insistence is that Rose had no title to convey. The entire argument presupposes that Rose could maintain an action to recover possession of the

property without first complying with Code Section 1611, i. e. tendering the amount of taxes and penalty due, and that petitioner by virtue of his quitclaim deed succeeded to the same indefeasible right.

We think the Act herein assailed could not by any stretch of the imagination have any retrospective effect as to the petitioner, he having no vested interest in the land when the said Act took effect. It conclusively appears that Rose executed his quitclaim deed to petitioner more than three years after the Act took effect. It is entirely too late for him to step into the shoes of the delinquent taxpayer and make the defense of a lack of due process.

In conclusion it should be said that only persons who have a vested interest in lands at the time this statute was enacted are in a position to question its validity on the ground that it is retrospective. Whether or not "trespassers" upon such lands could plead it as a bar to "any suit by such owner to protect his title" is an open question. It is not before us in the instant case.

Disregarding the provisions of the assailed statute, and pretermitting its constitutionality, we think the undisputed facts in the record, the applicable decisions cited in our prior opinions, and especially Code Section 1611, supra, fully sustains the opinion of the Court of Appeals. The petition is accordingly denied.