Walter E. SIMPSON, Ex Parte

83-260                                          664 S.W.2d 872

Supreme Court of Arkansas
Opinion delivered February 27, 1984

*Friday, Eldredge & Clark,* by: *William H. Sutton,* for petitioner.

*Steve Clark,* Atty. Gen., by: *Theodore Holder,* Asst. Atty. Gen., for respondent.

ROBERT H. DUDLEY, Justice. Walter E. Simpson, the Little Rock Police Chief, was criticized in a grand jury report. The report states that Simpson failed "before and after his arrival" to exert the leadership necessary to prevent members of the Pulaski County sheriff's office from tampering with evidence at the scene of the murder of Alice McArthur. The special grand jury was empaneled and the report was received by the judge of the Fourth Division of the Circuit Court of Pulaski County. Simpson moved that the personal criticism of him be expunged. The court denied the motion. By a writ of certiorari we order the circuit judge to expunge the matter from the report and from the record.

The overriding issue is whether a grand jury should be allowed to punish by judicially approved public censure for non-criminal conduct which is, in the opinion of the jury, improper.

The Declaration of Rights of the present Constitution of Arkansas provides that a grand jury may proceed by presentment or indictment. In some jurisdictions, grand jury reports are referred to as presentments. See *Dession & Cohen, The Inquisitorial Functions of Grand Juries,* 41 Yale L.J. 687, 705 (1932). In Arkansas presentments have never been considered the same as reports. Here, a presentment served the same function as an indictment and was differently described only because the investigation had been initiated by the grand jury. *State* v. *Cox,* 8 Ark. 436 (1847); *Ex Parte Faulkner,* 221 Ark. 37, 251 S.W.2d 822 (1952). There is no constitutional provision authorizing grand jury reports. It is clear that the grand jury found no criminal conduct on the part of Simpson and did not intend to return either a presentment or an indictment. Likewise, there is no statutory authority for grand jury reports. However, in *Ex Parte Faulkner, supra,* we took notice of the fact that "in this State, it has long been the custom and practice for grand juries to make written reports to the court concerning their investigations."

The majority of courts considering the issue have disallowed reports unaccompanied by presentment or indictment. See cases collected in *Application of United Electrical Radio & M. Workers,* 111 F. Supp. 858, 866 n.26 (S.D.N.Y. 1953).

The reasoning for the rule is sound. It is founded on the grand jury process and fundamental fairness. The inquisition is conducted in secret. Ark. Stat. Ann. § 43-927 (Repl. 1977). A juror commits a criminal offense if he discloses any of the evidence. Ark. Stat. Ann. §§ 43-928, 929. One being inquired about has no right to know that statements may be made against him. He has no right to confront his accusors. Ark. Stat. Ann. § 43-919. He has no right to cross-examine into the truth or falsity of the allegations. Ark. Stat. Ann. § 43-918. He has no right to testify and, at the same time, has no right to refuse to testify because the self-incrimination doctrine is inapplicable to non-criminal conduct. Consistent with the secret process, the public and the press have no right to read the grand jury minutes. The report is a state publication which carries the aura of approval by the judge

who accepted it. The public and the press have no way to look behind it to determine its fairness or its accuracy. On the theory that judges have an absolute privilege against libel suits, and that the grand jury is an arm of the court, grand juries are probably immune from libel suits. See *Restatement of Torts*, § 589 (1938); *Hayslip* v. *Wellford*, 196 Tenn. 621, 263 S.W.2d 136, cert. denied, 346 U.S. 911 (1953).

With the secret inquisitorial process as the background, it obviously becomes manifestly unfair to allow a grand jury report to publicly censure a person for an offense unknown to the law. If allowed to stand, the censure would be accepted as a matter of fact with the censured person never having been afforded an opportunity to rebut the supposed fact. The censured person could not be indicted for the non-offense and would never be given the right to be found not guilty.

All of the factors discussed above have led this Court to state, in *Ex Parte Faulkner, supra:*

> Grand juries are clothed with broad inquisitorial powers and the power to investigate should necessarily include the right and duty to report the result of such investigations. So long as grand jury reports relate to general conditions affecting the public welfare and without reflecting specifically upon the character, or censuring the conduct, of individual citizens they serve a wholesome purpose and are frequently followed by beneficial results to the community.

Many states have carved out an exception to the general rule of disallowing reports unaccompanied by indictments. That exception is for reports criticising public officials. This Court in *Ex Parte Faulkner, supra,* found it unnecessary to decide whether we recognized such an exception but, in an indication of intention, stated:

> It would seem that the weight of authority supports the proposition that it is improper for a grand jury to present with words of censure and reprobation a public official or other person by name without presenting

him for indictment and the accused has the right to apply to the court to have the objectionable matter expunged from the court records. 24 Am. Jur., Grand Jury, § 36; 38 C.J.S., Grand Juries, § 34(3). *Ex parte Robinson,* 231 Ala. 503, 165 So. 582; *Bennett* v. *Kalamazoo Circuit Judge,* 183 Mich. 200, 150 N.W. 141; *In re Report of Grand Jury of Baltimore City,* 152 Md. 616, 137 A. 370; *In re Report of Grand Jury,* 204 Wis. 409, 235 N.W. 789; *In re Presentment to Superior Court,* 14 N.J. Super. 542, 82 A.2d 496.

The trial judge, in his brief, urges us to adopt the exception. All of the reasons for the general rule also mitigate against the exception for public officials. In addition, there is a grave danger that grand jury reports, which are state judicial publications, may readily be used as instruments of unfair partisan politics. We refuse to adopt the exception.

Certiorari must be granted for yet another reason. Even those states which have adopted the exception will not allow a report which contains no facts but mere opinion. See *In re Crosby,* 126 Misc. 250, 213 N.Y.S. 86 (Sup. Ct. 1925). The reference to Simpson states that he failed to exert leadership over members of the sheriff's office. The allegation does not contain a statement of fact. It is opinion only.

An overlapping of investigative authorities exists in Arkansas. The sheriff's office had a duty to investigate the murder just as did the city police. Neither could lawfully exclude the other. Each could lawfully gather evidence. In such a situation, the extent to which leadership could properly be exerted by the leader of one group over the other group is solely a matter of opinion. In this area Simpson's opinion may be as valid, or even more valid, than the jurors' opinion. The report does not provide even the barest facts surrounding the supposed failure to exert leadership "before and after his arrival."

A writ of certiorari is granted ordering the circuit judge to expunge the matter from the report and from the record.

HICKMAN and PURTLE, JJ., dissent.

JOHN I. PURTLE, Justice, dissenting. There is not the slightest hint in the grand jury report, the majority opinion, or this dissent that appellant committed any criminal act. That is not the issue presented on this appeal. The question before us is whether the report of a grand jury may be expunged because it is critical of a public official.

The grand jury is one of the few remaining parts of our criminal justice system were non-lawyer citizens participate. I fear the opinion in this case will further diminish the role of the lay citizens in the court system. It was the people who granted powers to the legislative, executive and judicial departments in the first place. Already some courts are using six member juries to try civil cases. Seldom is a grand jury even called, and now if its report is not complimentary to public officials, the report will be expunged at the request of the offended party. Those charged with criminal acts have long sought, usually without success, to be able just to read the minutes of grand juries. We have said they are not entitled to see the records of the grand jury. *Arnold* v. *State*, 179 Ark. 1066, 20 S.W.2d 189 (1929).

Since 1871, grand juries have been charged with the following oath [Ark. Stat. Ann. § 43-904 (Repl. 1977)]:

> Saving yourselves and fellow jurors, you do swear that you will diligently inquire of, and present all treasons, felonies, misdemeanors and breaches of the penal laws over which you have jurisdiction, of which you have knowledge or may receive information.

Arkansas Stat. Ann. § 43-905 provides that grand juries keep minutes of their proceedings. The next statute (§ 43-906) authorizes them to report "the minutes of the proceedings and evidence so kept" to the prosecuting attorney. One of the chief statutes relating to the duties of the grand jury is Ark. Stat. Ann. § 43-907 which reads as follows:

> The grand jury must inquire — First. Into the case of every person imprisoned in the county jail, or on bail,

to answer a criminal charge in that court, and who is not indicted. Second. Into the condition and management of the public prisons of the county. Third. Into the wilful and corrupt misconduct in office of public officers of every description in the county.

Arkansas Stat. Ann. § 43-934 authorizes special grand juries and gives them the same powers a regular grand jury possesses. Circuit judges are authorized by law to appoint grand juries. *Rowland* v. *State*, 213 Ark. 780, 213 S.W.2d 370 (1948). Since the matter is discretionary with the circuit judge, we have no right to overrule unless there is an abuse of discretion. We have throughout the history of this court been tolerant of the actions of the judicial and other branches of government. It is right that we should be tolerant.

The majority rely heavily upon the case of *Ex Parte Faulkner and Coleman*, 221 Ark. 37, 251 S.W.2d 822 (1952). However, the opinion fails to quote from that part of the opinion which states:

> In *Ex parte Cook*, 199 Ark. 1187, 137 S.W.2d 248, we held that it was within the trial court's discretion to receive or reject a grand jury's report criticizing the former county judge's administration of county affairs where the investigation was at his request and the report did not amount to charges or accusations of criminal offenses.

The majority opinion correctly holds that as in *Faulkner*, supra, it has long been the custom and practice for grand juries to make written reports to the appointing courts. I agree and further state such practice should continue. The grand jury did not instigate this investigation as stated in the majority opinion. It appears the majority opinion holds that if a grand jury does not indict, it should make only complimentary reports. In *Faulkner* the court had before it the objectionable matter. In the present case we do not have either the report or all of that part of the report concerning the appellant. The majority is expunging parts of the grand jury report that none of us has seen. From the

record it appears that the special grand jury was specifically charged with looking into the Alice McArthur murder. The small part of the report we have is squarely on that subject. In *Faulkner* the petitioners were accused of criminal acts and later indicted by the grand jury. The appellant had no right to cross examine any witness nor to face his accusers. Neither does anyone else being investigated by a grand jury. Why the offense at being treated as all others who are investigated by grand juries? The public and press have as much leeway in the present case as they have in any other case reported by any grand jury. This grand jury was mandated by the court and the laws of the state of Arkansas to look into this matter and all other matters investigated by them. The jury was also extremely critical of the Pulaski County Sheriff's Department. Why should we not sua sponte expunge that section while we are reviewing the action of the grand jury? Also, why should we not expunge the record for those who are indicted but are never tried or are acquitted?

The *Faulkner* court relied on *In re Jones*, 101 App. Div. 55, 92 N.Y.S. 275, as precedent for expunging the report of a grand jury. In *Jones* the New York court refused to expunge a grand jury report which was critical of public officials for failure to properly perform their duties. There was neither indictment nor grounds for indictment in *Jones*. The question presented in *Faulkner* was stated by the court: "The question then arises as to the right of petitioners to expunge a grand jury report containing findings which would have warranted their indictment for slander where no such indictment is returned or intended." Therefore, *Faulkner* does not stand for the proposition for which it is cited in the majority opinion. In the present case the jury did not accuse the appellant of any criminal act. Whether we follow the majority or minority rule is not the real question. What we need to follow is the right rule; the one which employs common sense. The *Faulkner* opinion did not reject the holding in *Jones* that expungment of critical grand jury reports is discretionary with the impaneling judge. It only held that a person has the right to have accusations expunged from a grand jury report which makes criminal accusations but fails to indict the person about whom the remarks are made. The Supreme Court of

Arkansas has never held that a public official has a right to expunge a grand jury report which is critical but which does not allege criminal conduct. This court has held in *Ex Parte Cook*, 199 Ark. 1187, 137 S.W.2d 248 (1940) and *Faulkner* that a report of a grand jury incidentally pointing out that certain public officials are responsible for acts or omissions or neglect of duty, not amounting to criminal acts, is not subject to being expunged. The most that can be said is that such matters are left to the discretion of the impaneling judge. We have even held that an indictment cannot be quashed or set aside because of illegal testimony or want of any testimony at all. *State* v. *Fox*, 122 Ark. 197, 182 S.W. 906 (1916).

Grand juries are made up of reputable citizens residing in the county. Thus they become the voice and conscience of the county. It is not their privilege only, but also their duty, to speak out on matters of public concern and interest. We should not quiet their voice or still their conscience.

HICKMAN, J., joins in this dissent.