# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
July 11, 2012 Session

## MILLARD BURRIS ET AL. v. DEXTER WATSON ET AL.

### Appeal from the Chancery Court for Monroe County
No. 16,036     Jerri S. Bryant, Chancellor

---

### No. E2012-00120-COA-R3-CV-FILED-AUGUST 28, 2012

---

This case began when the original plaintiffs filed a complaint to quiet title seeking a declaration of the boundary line separating their land from the defendants' neighboring property. The disputed line is the northern boundary of the plaintiffs and the southern boundary of the defendants. The defendants asserted in their answer that they had adversely possessed the disputed property. Shortly after this action was filed, the plaintiffs' property was sold to a third party in a court-ordered sale. The purchaser was substituted as the sole plaintiff in place and instead of the original plaintiffs. The defendants moved that the case be dismissed on the ground that the sale to the new owner was champertous. The court denied the motion and conducted a trial on the merits after which it entered judgment in favor of the remaining plaintiff. The defendants appeal. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

J. Lewis Kinnard, Madisonville, Tennessee, for the appellants, Dexter Watson, Dewey Watson, Jr., Ruth Marie Millsaps and Earl McKinley Watson.

Dwaine B. Thomas, Madisonville, Tennessee, for the appellee, Thomas Pannell.

# OPINION

## I.

### A.

Rhea Burris and Dewey Watson were neighboring landowners. As each passed away, the property of the deceased passed to the heirs. A dispute arose as to the correct location of the common boundary that defines the northern boundary of the Burris property and the southern boundary of the Watson property. The heirs of Rhea Burris ("the Burris heirs") filed this action against the heirs of Dewey Watson ("the Watson heirs"). The Burris heirs sought a declaration that the correct location of the line is as surveyed by their surveyor, Mr. Ogle, and not as surveyed for the Watson heirs by Mr. Torbett.

Shortly after suit was filed, one of the Burris heirs filed a separate partition action in circuit court. The circuit court ordered that the Burris property be sold and the proceeds divided among the Burris heirs. Thomas Pannell ("the Buyer") purchased the Burris property at an auction conducted pursuant to the circuit court order. It is undisputed that, at the sale, the Buyer was made aware of the controversy concerning the true boundary line and of the Watson heirs' claim that they were in possession of some of the property claimed by the Burris heirs.

After the sale, the Buyer was substituted as the sole plaintiff in this action. The Watson heirs filed a motion to dismiss alleging that the sale to the Buyer is champertous and therefore barred by Tenn. Code Ann. § 66-4-202 (2004). Sections 201, 202 and 203 provide, respectively:

> No person shall agree to buy, or to bargain or sell any pretended right or title in lands or tenements, or any interest in such pretended right or title.

> Any such agreement, bargain, sale, promise, covenant or grant shall be utterly void where the seller has not personally, or by the seller's agent or tenant, or the seller's ancestor, been in actual possession of the lands or tenements, or of the reversion or remainder, or taken the rents or profits for one (1) whole year next before the sale.

> Any suit at law or equity brought for the recovery of the lands or tenements bargained or contracted for, whether the

agreement, sale, bargain, covenant, grant, or promise be executed or executory, shall be forthwith dismissed, with costs, by the court in which such suit may be pending, upon the facts being disclosed.

After briefing and argument, the court denied the motion to dismiss and the case proceeded to a bench trial.

Surveyor Michael Ogle – the surveyor of the Burris heirs – was the first witness to testify. He stated, on behalf of the Buyer, that the correct boundary line for the Burris property was a straight line from their northeast corner to their northwest corner. The parties stipulated that the corners are located correctly. Ogle testified that the straight line corresponds to the deeds and to an old section line. The Ogle survey shows approximately 6.7 acres in dispute as shown on a plat prepared by the surveyor for the Watson heirs. The disputed acreage is a triangular shaped area that dips to the south of the straight line surveyed by Mr. Ogle.

Dexter Watson and two of his brothers appeared as witnesses. Dexter Watson testified that his surveyor, Mr. Torbett, originally surveyed the boundary line between the two properties consistent with the survey later prepared by Ogle. Dexter Watson refused to pay surveyor Torbett unless and until he prepared a revised survey. The revised Torbett survey followed a line pointed out by Dexter Watson. At least one of the Watson brothers testified that the boundary line was a straight line from one corner to the other. None of the Watson brothers described any sustained activity on the area in dispute.

The Buyer called one rebuttal witness, Mr. Bivens, who testified that he conferred with Dewey Watson Senior, the father of the Watson heirs and the owner of the Watson property at the time of the conversation, about the location of the property line. The line, as pointed out by Mr. Watson, Sr., was consistent with the line as surveyed by Ogle.

B.

After trial, the court made

the following findings:

1. The law of [c]hamperty does not apply to the case at bar for the following reasons:

-3-

a. The subject sale of property in this case was done at the order of the Monroe County Circuit Court.

b. Full public notice was given of the sale by the Circuit Court Clerk.

c. A full and complete description of the disputed property line, including the area under dispute, was included in the notice circulated previous to and on the date of the public auction.

d. Case law presented by the Plaintiff shows clear intent that [c]hamperty does not apply to court-ordered sales. Defendants produced no case law to the contrary.

e. The oversight of the Circuit Court in the sale at question in this case protects against fraud by the participants which the [c]hamperty laws are designed to address. The Monroe County Circuit Court approved the auction and resulting sale.

2. The proper designation of the property line separating the two properties in question is the designation made by the Plaintiff's surveyor, Michael Ogle, and designated on his plat as the line nearest the section line. The Court finds that this is the proper line for the following reasons:

a. The Plaintiff's surveyor, by direct testimony confirmed that the line most reasonably delineated by the deed record of both the Plaintiff's and Defendant's deeds was the existing section line.

b. No physical evidence of the line existed, there was no fence, no monuments, etc.

c. Witnesses presented by the Defendants were inconsistent. All witnesses presented by the Defense agreed with the two corners (designated

-4-

by yellow dots on Plaintiff's Exhibit 1), and all witnesses agreed it should be a straight line.

d.  The only line that would support the above testimony would be that of the Plaintiff's surveyor.

e.  The Defendants' recorded plat does not reference any geographical data nor monuments. The surveyor hired by the Defendants did not appear nor offer testimony to substantiate his survey nor rebut the Plaintiff's surveyor.

f.  Any agreement referenced by the testimony of the Defendants is not binding as it is not in writing and concerns an issue of real property, and is as such void by the Statute of Frauds.

## II.

The issues, restated, are:

Whether the trial court erred in holding that the champerty statutes do not apply to judicial sales.

Whether the evidence of adverse possession preponderates against the court's finding that the true boundary is as surveyed by Ogle.

## III.

A concise statement of the standard of review applicable to the present case, is found in ***Moody Realty Co. v. Huestis***, 237 S.W.3d 666 (Tenn. Ct. App. 2007).

In a nonjury trial, our standard of review is *de novo* on the record. ***Wright v. City of Knoxville***, 898 S.W.2d 177, 181 (Tenn. 1995). We apply a presumption that the trial court's findings of fact are correct and will reverse the court below only if the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). We do not apply that presumption, however, to the trial

> court's conclusions of law. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

I*d*. at 673. The determination of whether the champerty statutes require dismissal is a question of law subject to de novo review.

IV.

In *Sims' Lessee v. Cross*, 18 Tenn. 460, 462 (1837) the Court held that the "evils" addressed by the champerty statutes "only exist in cases of individual sales," therefore, the champerty statutes do not vitiate a claim to property acquired through a sale conducted pursuant to a judgment or decree of a court of competent jurisdiction. The Watson heirs acknowledge that the holding in *Sims* is contrary to their argument that champerty forbids the Buyer from claiming the land he purchased at the partition sale. They refer to *Sims* as having "unique facts" but offer no explanation of what is unique about *Sims*. Our research indicates that there is nothing "unique" about *Sims*; it is in complete accord with well-established law that purchases at judicial sales of property are not champertous, even if the property is claimed adversely. See *Whitaker v. House*, 213 Tenn. 61, 68-69, 372 S.W.2d 194, 198 (Tenn. 1963) ("The second ground of the demurrer, based on application of the champerty law, T.C.A. 64–406 et seq., has no merit because '[o]ur champerty laws have no application to judicial sales of property, or deeds of conveyance, wherein the State is the vendor.' *Lee v. Harrison*, 196 Tenn. 603, 619, 270 S.W.2d 173, 180 (1954)."); *Hames v. Archer Paper Co.*, 45 Tenn. App. 1, 18-19, 319 S.W.2d 252, 260 (1958) ("The law is settled in Tennessee that the champerty statutes do not apply to execution sales."); 71 A.L.R. 592, 593*, Champerty rule or statute as applicable to tax sale, execution sale, or judicial sale, or to conveyances by persons claiming under such sales,* (1931) ("It is now well settled as a general rule that a judicial sale or a conveyance made under order or decree of a court of competent jurisdiction is not within the application of the champerty doctrine or statute, and hence is not rendered invalid by the fact that the land is in the adverse possession of a third person."). Accordingly, we hold that the trial court did not err in denying the motion to dismiss on the ground that the Buyer was guilty of champerty.

The Watson heirs argue, without much elaboration, that the evidence "was not sufficient to establish the boundary line where the Court found it to be." Our standard of review requires us to presume that the trial court's factual findings are correct unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d). The court made several specific findings. We have reviewed the record in its entirety and we cannot say that the evidence preponderates against those factual findings. Therefore, we find no merit to the argument that the evidence was insufficient to support the court's findings.

-6-

In fact, it was the Watson heirs' evidence of adverse possession that was lacking. It was their burden to establish, by clear and convincing evidence, their alleged adverse possession of the land sold to the Buyer. *Gernt v. Floyd*, 131 Tenn. 119, 174 S.W. 267, 268 (1915). Any evidence of possession was sporadic at best and not consistent between the Watson brothers. *See id*. (evidence of cutting timber on intermittent basis and erection of a shack were insufficient to show adverse possession ).

V.

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellants, Dexter Watson, Dewey Watson, Jr., Ruth Marie Millsaps and Earl McKinley Watson. This case is remanded, pursuant to applicable law, for enforcement of the trial court's judgment and for collection of costs assessed by that court.

_____
CHARLES D. SUSANO, JR., JUDGE