Mac A. TIDWELL and wife, Margaret Tidwell, and Appalachian, Inc., Plaintiffs-Appellants,

v.

Elizabeth B. VAN DEVENTER, Christopher Van Deventer IV, Cecil B. Newman, and the Heirs at Law of Elmer Tate, Defendants-Appellees.

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

July 6, 1984.

Permission To Appeal Denied by Supreme Court Dec. 10, 1984.

J. Lewis Kinnard, Madisonville, for appellants.

W. Kyle Carpenter, Knoxville, for Van Deventers.

Robert J. Pennington, Madisonville, for Newman.

Kendred A. White, Madisonville, for Heirs of Tate.

MATHERNE, Retired Judge.

The plaintiffs Tidwell sue to remove cloud on their title to a tract of mountain land located in Monroe County, Tennessee. The plaintiffs allege that the defendants Van Deventer make claim to a portion of their land, and in the event the Van Deventers should prevail, the plaintiffs seek relief from the other defendants, plaintiffs' predecessors in title under warranty deeds executed by those defendants. Cecil B. Newman, property assessor for Monroe County, was made party defendant so that the court could order him to make necessary changes on his official records.

The defendants Van Deventer, by answer, allege that they are the owners in fee of 189 acres of land in District 5 of Monroe County; that the Tidwells can show no source of title to the land they now claim; that they and their predecessors in title have had their assurancies of title recorded for more than 20 years; they and their predecessors in title have paid taxes on their land for more than 20 years prior to this lawsuit, and under Tennessee Code Annotated § 28–2–109 they are presumed prima facie to be the legal owners thereof; that the plaintiffs' suit is barred by TCA § 28–2–110 in that they and those through whom they claim have failed to have taxes assessed and paid for more than 20 years prior to this lawsuit.

The defendants, heirs of Elmer Tate, by answer deny all material allegations of the complaint and deny that the plaintiffs are entitled to any relief.

The chancellor found that the defendants Van Deventer are the owners of 75 acres of the land claimed by the plaintiffs, and ordered a line established between the parties and vested title in the defendants Van Deventer to that 75 acres. The chancellor held that the plaintiffs bought their land by the boundary and not by the acre and, they having walked the boundaries, received what they bargained for and were entitled to no relief against their predecessors in title.

The plaintiffs appeal insisting that the chancellor erred in failing to find the plaintiffs owned their tract in fee simple; in finding the Van Deventers to be the owners of 75 acres of the land claimed by the plaintiffs; and in failing to grant the plaintiffs relief as against their predecessors in title under their warranty deeds.

In 1952, Christopher Van Deventer III, Elizabeth B. Van Deventer and Christopher Van Deventer IV owned land in District 5 of Monroe County, Fractional Section 12, which land adjoined a tract owned by Elmer Tate in the same District and Section. The parties settled a disputed common boundary by striking a line "Beginning at the Northeast corner of Fractional Section 12, Fractional Township 1 South, Range 5 East, and running in a Southwest direction in a straight line to an oak tree in the center of the Forest Service road at Sandy Gap." The Van Deventers conveyed to Elmer Tate by warranty deed all the disputed land lying southeast of this line, and Elmer Tate, et ux conveyed to the Van Deventers all the disputed land lying north-

west of this line. Each deed called for 75 acres and each deed recited the consideration as "One Dollar ($1.00) and other good and valuable considerations, including the exchange of real estate." From that date until 1982 the Van Deventers paid taxes on 75 acres in Fractional Section 12. From 1954 to 1973, Elmer Tate paid taxes on 75 acres in Fractional Section 12. In 1974, after Elmer Tate's death and a sale of 300 acres of land by his heirs to Appalachian, Inc., that corporation paid taxes on 75 acres in Fractional Section 12. In 1975, the plaintiffs Tidwell purchases the 300-acre boundary from Appalachian, Inc. The Tidwells became aware that there was some question whether they owned 300 acres when they received a notice of tax reduction in 1979 or 1980, after the first tax map ever drafted for Monroe County was completed. Upon investigation, they found the Van Deventers' claim and this lawsuit followed.

The problem of determining what property the parties exchanged in their 1952 deeds results from references in the deeds to "Sandy Gap." The deed from the Van Deventers to Elmer Tate includes the following call in its description: "... thence following the North Carolina line to an oak tree in the center of the Forest Service road at Sandy Gap...." The 1952 deed from Elmer Tate to the Van Deventers includes the following call: "Beginning at the Northeast corner of Fractional Section 12, Fractional Township 1 South, Range 5 East, and running in a Southwest direction in a straight line to an oak tree in the center of the Forest Service road at Sandy Gap...."

The Van Deventers claim that "Sandy Gap" as used in the 1952 deeds refers to a location on the North Carolina line between Wolf Ridge and Hipps Ridge. The Tidwells and Appalachian, Inc. claim that "Sandy Gap" as used in the deeds refers to a point on the North Carolina line one-half mile to the northwest of the location between Wolf Ridge and Hipps Ridge.

Tennessee Valley Authority maps published prior to 1957 show Sandy Gap located at a point between Wolf Ridge and Hipps Ridge. After 1957, the location that had previously been called Sandy Gap was designated Hipps Gap; after 1957 the designation Sandy Gap was moved one-half mile to the northwest. United States Forest Service maps dated 1953 and earlier show Sandy Gap at a location between Wolf Ridge and Hipps Ridge. After 1968, the location was changed on those maps to a point one-half mile to the northwest.

There was considerable conflicting testimony on the location of Sandy Gap in 1952. The chancellor apparently could not resolve the discrepancies, but he did find that the Van Deventers proved their claim to 75 acres of land and so decreed. We agree with the chancellor that the Van Deventers prevailed.

The Van Deventers deraign their title back to the State Grant in 1847. The only land in Fractional Section 12 to which the Tidwells could show color of title was the 75 acres the Van Deventers conveyed to Elmer Tate in 1952, and a tract purchased by Elmer Tate from the heirs of Grayson Garrett by several deeds dating from 1945 through 1951. The Grayson Garrett land located in Fractional Section 12 was referred to as 75 acres in some deeds, but it could not have been the Van Deventers' 75 acres deeded by Elmer Tate in 1952.

■ The deed from the heirs of Elmer Tate to Appalachian, Inc. recites:

> This boundary known as the Grayson Garrett Tract and being all of the land owned by Elmer Tate in Fractional Section 12 and 7. This boundary is bounded Northwest by Vandiventer, (sic) Northeast by U.S. Forest Service, South by North Carolina and Tennessee State line, containing 300 acres, more or less.

This deed acknowledges Van Deventer land forming the northwest boundary of the land conveyed. That would be the location of the 75 acres deeded to the Van Deven-

ters by Elmer Tate in 1952. The position taken by the plaintiffs would result in Elmer Tate having conveyed to the Van Deventers about 75 acres of land belonging to the U.S. Forest Service. We hold that the evidence preponderates in favor of the finding of the chancellor that the Van Deventers own the 75 acres described in the chancellor's decree, which tract lies to the northwest of the Tidwell property.

The Tidwells and Appalachian, Inc. argue that they and their predecessors have established ownership of the land by: (1) more than 20 years adverse possession which establishes a common law presumption of a grant by the state; (2) seven years adverse possession coupled with recorded assurance of title (TCA § 28-2-101); and (3) seven years adverse possession coupled with 30 years recorded assurance of title. (TCA § 28-2-105).

■ Each of the three grounds asserted as establishing ownership in the Tidwells requires adverse possession of the land by the Tidwells and those under whom they claim. The adverse possessor has the burden of establishing by clear and positive proof such adverse possession as will bar the real title. *Jones v. Coal Creek Mining & Mfg. Co.* (1915) 133 Tenn. 183, 180 S.W. 991; *Davis v. Louisville & N.R.R.* (1921) 147 Tenn. 1, 244 S.W. 483. The above rule applies to both the length of time and the character of the possession. *Southern Coal & Iron Co. v. Schwoon* (1921) 145 Tenn. 191, 239 S.W. 398. Actual possession is necessary to perfect title under TCA § 28-2-101. There must be exclusive, actual, adverse, continuous, open and notorious possession for the entire prescriptive period, under a claim of right or title to the property. And the owner must have knowledge of the adverse claim, or it must be so open and notorious as that he will be presumed to have notice of it. *Sequatchie Coal & Iron Co. v. Coppinger* (1895) 95 Tenn. 526, 32 S.W. 465. There may be actual possession in law without actual occupation or cultivation. *Green v. Cumber-*

*land Coal & Coke Co.* (1903) 110 Tenn. 35, 72 S.W. 459.

■ The record reveals that in 1953 Elmer Tate had the timber on his property in Fractional Section 12 cut. The parties who did the cutting testified, but their testimony is not of any assistance in determining whether the lands claimed by Van Deventer were cut over. These parties stated that they cut up to a line blazed by Elmer Tate. They admit that by mistake they cut on some of the land belonging to the Forest Service. They described directions by pointing to a map, and we cannot know where they were pointing or the direction they refer to. It is established that the timber on a portion of the Van Deventer land was cut and protest was made by Christopher Van Deventer III. The only other acts of possession shown were the fact that some parties camped at some unknown location on the land, and the various parties did walk what was pointed out to them as the boundaries. Under the foregoing authorities we hold that the plaintiffs have not shown such adverse possession of the Van Deventer land as will bar the superior legal title held by the Van Deventers. No claim based upon adverse possession has been established.

The Van Deventers argue that the plaintiffs' claim is barred by TCA § 28-2-110(a), which provides:

*Action barred by nonpayment of taxes.—(a) Any person having any claim to real estate or land of any kind, or to any legal or equitable interest therein, the same having been subject to assessment for state and county taxes, who and those through whom he claims have failed to have the same assessed and to pay any state and county taxes thereon for a period of more than twenty (20) years, shall be forever barred from bringing any action in law or in equity to recover the same, or to recover any rents or profits therefrom in any of the courts of this state.*

This statute has been applied in a suit to remove cloud on title. *Lee v. Harrison*

(1954) 196 Tenn. 603, 270 S.W.2d 173. It was also applied and held to bar a suit by a plaintiff claiming property described in her deed which was also encompassed in a deed made to the defendant. *Alexander v. Patrick* (Tenn.App.1983) 656 S.W.2d 376. The statute was most recently applied to bar plaintiff's claim to mineral rights in certain lands. *Burress, et al. v. Woodward, et al.*, (Tenn.1984) 665 S.W.2d 707.

The evidence shows that from 1951 to 1952 the Van Deventers paid taxes on 189 acres of land in Fractional Section 12. In 1953, following the conveyances between Elmer Tate and the Van Deventers, the Van Deventers paid taxes on 189 acres, but they were reimbursed for one-half of that amount by Elmer Tate. In 1954 no taxes were assessed to Elmer Tate. A notation in the tax book under Van Deventer's name indicated that the 189 acres had been divided, with Tate paying taxes on 75 acres, and the Van Deventers paying on 75 acres. Thereafter, until 1982 the Van Deventers paid taxes on 75 acres assessed to them in Fractional Section 12. From 1954 to 1973, Elmer Tate paid taxes on 75 acres in that Section. The land on which Elmer Tate paid taxes was described as "Sec. 12 from Van Deventer." 1974 taxes on 75 acres were assessed to Elmer Tate with a notation "now Sanford Gray" [president of Appalachian, Inc.] by Tate's name; after the conveyance by Appalachian, Inc. to the Tidwells, the Tidwells paid taxes on varying acreages in Fractional Section 12 through 1982.

█ The Van Deventers have paid taxes on the 75 acres of land in Fractional Section 12 since 1952. It is unclear as to what land in that section the Tidwells have paid taxes on. It is clear, however, that the Tidwells and "those through whom they claim" have failed to have taxes assessed and paid on the 75 acres the Van Deventers own in fractional Section 12 for a period of more than 20 years. The statute is, therefore, a complete bar to their present cause of action. *Burress, et al. v. Woodward, et al., supra.*

For the reasons stated, we affirm the chancellor's decree setting a boundary between the parties and vesting title to a described 75 acres in the Van Deventers.

█ We agree with the chancellor that the sale to the Tidwells was by the boundary and not by the acre. However, we disagree with the chancellor's holding that the purchasers walked the boundaries and got what they bargained for. It is true that the purchasers, Sanford Gray for Appalachian, Inc. and Mac Tidwell, walked the boundaries as pointed out to them. The boundary walked, however, included the Van Deventer's 75 acres which the purchasers did not get under the deeds from the Tate heirs. This problem is not one of a 300-acre tract of mountain land ending up 75 acres short. Rather, we have a situation where the buyers were shown land not owned by the sellers and the sellers, by warranty deed, attempted to convey that land to the buyers. It is a matter of title, not acreage. We will express no opinion on what, if any, remedy the various buyers have, but we remand the lawsuit to the Chancery Court for a determination of those issues.

The cost in this court is adjudged one-half against the Tidwells and one-half against the Van Deventers.

PARROTT, P.J., and GODDARD, J., concur.