IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 19, 2003 Session

## GINGER SWEETON v. ANGELA ORANGE, ET AL.

**A Direct Appeal from the Chancery Court for Grundy County**
**No. 5032      The Honorable Jeffrey F. Stewart, Chancellor**

_____

**No. M2002-00211-COA-R3-CV - Filed April 25, 2003**

_____

This is a dispute between two adjoining property owners concerning the location of the common boundary between their respective properties. A survey of the line indicates that the land in question is property of Appellees. Appellant contends that, due to actions taken by her predecessors in interest, she has claim to the property by virtue of adverse possession. The trial court found that the land in question, with the exception of certain buildings used for storage, is the property of Appellees. Appellant appeals. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Marshall A. Raines, Jr., Jasper, For Appellant, Ginger Sweeton

James S. Stephens, Tracy City, For Appellees, Angela Orange, James Orange, and David Caldwell

**OPINION**

This is a dispute between two adjoining property owners concerning the location of the common boundary between their respective properties. The dispute involves the ownership of a strip of land (the "Land") approximately ninety-five (95) feet wide and two hundred twenty-five (225) feet deep. The families of the parties have lived next to one another since 1970 without realizing that there were conflicting claims of ownership. The conflict began when James Orange ("Mr. Orange") and his wife, Angela Orange ("Ms. Orange") hired David Caldwell (Mr. Caldwell," and together with Mr. Orange and Ms. Orange, "Defendants," or "Appellees") to clear trees and underbrush from the Land in April 2000.

On September 15, 2000, Ginger Sweeton ("Ms. Sweeton," "Plaintiff," or "Appellant") filed an ejectment suit against Defendants. The Defendants answered on October 11, 2000. Prior to the

scheduled hearing, a problem arose concerning Ms. Sweeton's claim of title to the Land. Specifically, Ms. Sweeton claimed that she gained ownership of the Land by quitclaim deed from Bessie Oliver, and that the quitclaim deed contained the wrong property description. On March 7, 2001, Ms. Sweeton filed a Motion to Substitute Real Party in Interest. An Order of Continuance was granted on March 19, 2001, allowing Plaintiff time to cure.[1]

The trial was held on September 4, 2001 and October 17, 2001. On December 21, 2001, the trial court issued its Order, which reads, in pertinent part, as follows:

> This cause came on before me on the 17th day of October, 2001, based upon the two hearings had before this court on September 4, 2001 and October 17, 2001, the court makes the following findings:
> 1. The Plaintiff alleged in her pleadings that she had legal interest in property on which the Defendants had trespassed. The court finds that there is no overlap in the legal description of the property owned by the respective parties as described in the complaint. The court finds that the Defendant's activities complained of occurred on property [for] which Defendant had a deed. The Plaintiff alleged at trial and moved this court for permission to amend her complaint to allege prescriptive rights in the subject property pursuant to adverse possession. The court finds that the Plaintiff should be allowed to amend its complaint to conform the pleadings with the proof offered at trial.
> 2. The court finds that the Plaintiff has failed to show that she has adversely possessed any property owned by the Defendant Angela Orange with the exception of the area around the "Existing Buildings" identified on the April 14, 2000 survey prepared by Charles Schaerer, a modified copy of which is attached as Exhibit "A" to this Order.
> 3. The court finds further that the Plaintiff has no right, title and interest to any other portion of the Defendant Angela Orange's property described in Deed Book 130 Page 495 except as described hereafter in this order and established in the attachment.
> 4. The court finds that the Plaintiff has failed to demonstrate by the preponderance of the evidence that she has openly, continuously, actually and notoriously occupied the Defendant's property (apart from that identified hereafter) for the requisite 20-year period of time preceding the filing of this action, and that any earlier such occupation of the land which may have occurred has long since

---

[1] We note that Ms. Oliver was never named as a Plaintiff in this action. Due to her age and infirmity, she did not testify at trial. The issue of the incorrect property description on the quitclaim deed was never cured and Ms. Sweeton proceeded to trial relying on adverse possession, although the real party in interest is Ms. Oliver.

fallen into disuse and has been abandoned by the Plaintiff or her predecessors thereto.

WHEREFORE PREMISES CONSIDERED, the court finds that:

1. The Plaintiff is hereby declared to be the owner of that property described as follows:

> BEGINNING at a point located north 46 deg. 11 min. 00 sec. west 5 feet from the western edge of the building identified as building "A" on attachment "A" to this order, the same being located on the northern boundary of Orange (Deed Book 130 Page 495); thence south and east and parallel with the western edge of shed and continuing 5 feet beyond the length of the shed to a point; thence continuing in a direction parallel to the southern side of this shed and 5 feet from the same and continuing with the course of that line to its intersection with the eastern margin of the Orange property; thence north 43 deg. 49 min. 00 sec. east with the Orange property line to a corner; thence with the Orange line north 46 deg. 11 min. 00 sec. west through an existing building identified as "B" on the attached order, to the point of beginning. Said portion identified hereinabove being the northeast corner of the Orange property described in Deed Book 130 Page 495.

2. The court hereby declares that the Plaintiff, her heirs and assigns have no interest in any other property contained within the .86 acre tract of Angela Orange and described in Deed Book 130 Page 459 and as identified on Exhibit "A" to this order.

Ms. Sweeton appeals from the December 21, 2001 Order and raises the following issues for our review as stated in her brief:

> I. Whether the Trial Court erred in finding that if not obtained under color of title, Appellant had not acquired the subject property by prescription or adverse possession.
>
> II. Whether the Trial Court erred in finding that if the subject property had in fact been acquired adversely or by prescription that the subject property had subsequently been abandoned.

In order to properly address the Appellant's issues, we must first give a synopsis of the evidence presented at trial. Before giving a synopsis of each witness' testimony, we first summarize the claims of each party. Ms. Sweeton's claims of adverse possession arise from the actions of her husband's step-grandfather, Emmet Oliver, and her husband's grandmother, Bessie Oliver. Mr. Oliver allegedly used the Land as a farmstead on which he kept chickens, a horse, and a cow. Although Mr. Oliver died some twenty years prior to the commencement of this action, he had not actively farmed the Land since the mid 1960s. The Appellant contends that Mr. Oliver built a fence in the 1940s and maintained the enclosed section, which included the Land in question, as part of his farm. In contrast, the Appellees assert that the fence was built in the 1970s as a "cross-fence" to subdivide the Orange property and to serve as an erosion control. The fence is no longer standing, having been destroyed either by the 2000 bulldozing or at some time prior. The Land in question had been overgrown with underbrush by the time James and Angela Orange moved onto the property.

The central factual issue before the trial court was what, if any, portion of the Land was actually used by Mr. Oliver. Because Mr. Oliver died over twenty years prior to the trial and because his widow, Bessie Oliver, was unable to testify, Ms. Sweeton relied upon the testimony of witnesses who remembered the Land from the time Mr. Oliver allegedly occupied it. The testimony offered by Plaintiff is summarized as follows[2]:

Helen Sweeton–Ms. Helen Sweeton is the 75-year-old daughter of Bessie Oliver. She is the step-daughter of Emmet Oliver, and the mother-in-law of Ginger Sweeton. Helen Sweeton testified from her recollection of the Land during her childhood in the 1940s and from several photographs from the 1940s, 1950s and 1960s. Her testimony concerned alleged improvements that Mr. Oliver made to the Land. Helen Sweeton also testified that she and her son had planted some rose of sharon bushes on the Land approximately two years prior to trial. These bushes, she testified, were destroyed when the Oranges had the land bulldozed in 2000. Helen Sweeton testified that she had not had the Land surveyed but that she knew where the property line was from her memory of where Mr. Oliver had erected the fence.

Garnet Ann Shafer: Ms. Shafer was 62-years-old at the time of the trial. She is the owner of the property that abuts the Oliver/Sweeton property on the south. Although Ms. Shafer has owned her property since 1994, she had only lived on the property two years at the time of trial. However, the property has been in Ms. Shafer's family for many years and she testified from her childhood recollections. Ms. Shafer testified that Mr. Oliver had used the Land as range for his cows and goats. Ms. Shafer further testified that Mr. Oliver had erected a wire fence along the property line between his land and the Orange land. She stated that the fence had been there as long as she could remember (at least since Ms. Shafer was six or seven years old, according to her testimony) and that the fence

___

[2] We note that most of the witnesses marked their recollection of the property line on a dry-erase board, on which was drawn the Oliver/Sweeton and Orange land. This dry-erase board was not preserved for the record. There is also a videotape, Exhibit 17 at trial, which was not made part of the record.

was still there in 1994 when she moved onto her property. She testified that Mr. Oliver kept the fence in good repair.

Billy Sweeton–Mr. Billy Sweeton was fifty-three years old at the time of the trial. He is the grandson of Bessie Oliver, and the son of Helen Sweeton. Billy Sweeton testified that he would stay with his grandmother during his summer breaks when he was about twelve or thirteen years old. During these summer visits, Billy Sweeton recalled that Mr. Oliver had wire fencing around his property. Billy Sweeton indicated that he had walked the fence-row approximately four years prior to trial and that, at that time, the fence was still in place. While on the stand, Billy Sweeton drew a diagram of where he remembers the fencing; this diagram was introduced as Exhibit 5.

Jerry Sweeton: Mr. Jerry Sweeton is the younger brother of Billy Sweeton. He is the brother-in-law of Ginger Sweeton. He, like his brother, spent summers with his grandmother, Bessie Oliver, around the time he was ten or twelve. At the time of the trial, Jerry Sweeton was 48-years-old. Jerry Sweeton used to mow the property between the Oliver land and the Orange land but he had not mowed that land for approximately five years prior to trial. At the time he was mowing this land, Jerry Sweeton testified that there was a wire fence in place.

The Defendants offered the following proof at trial:

James Douglas Orange: Mr. Douglas Orange and his wife, Angela, are the current owners of the Orange property. Douglas Orange's father bought the property in or around 1970. Douglas and Angela Orange have owned the property since 1997. After taking possession of the property, Douglas Orange had the land surveyed. The survey clearly shows that the Land in question is part of the Orange property. Douglas Orange testified that, when he had the land cleared in 2000, he tore down a "cross-fence" that his father had erected in the 1970s on the property but that the wire fence that was allegedly built by Mr. Oliver was still standing. According to Douglas Orange, the Oliver fence never contained the Land in question. Douglas Orange also testified that his father, James Orange, Sr., had a garden on the Land beginning in 1970 or 1971.

James Orange: Mr. James Orange is the father of Douglas Orange. He owned the Orange property from 1970 until 1997. James Orange testified that an outhouse that is still on the Land in question was there when he moved onto the property in 1970. James Orange stated that there was a path from the "Lawson house"–the "Lawson house" was a brick house on the Orange property–to the outhouse but no path from the Oliver/Sweeton property to the outhouse. James Orange further testified that he had put a garden on the Land in question from 1970s on and that neither the Olivers nor the Sweetons had ever contested his use of the Land. As to the other buildings that were on the edge of the Land and allegedly built by Mr. Oliver, James Orange stated that those buildings were "dilapidated" when he moved onto his property in 1970 and were definitely not in use by Mr. Oliver at that time. James Orange also testified that he built a "cross-fence" on the Land and that he ran a water line over the Land in question and, hitting rock about twenty feet into the property, wired the pipe to a fence running parallel with the highway. Again, there was no testimony concerning any objection from Mr. Oliver over these uses of the Land.

Edward Ray Orange: Mr. Ray Orange is the son of James Orange and the brother of Douglas Orange. Ray Orange's testimony was similar to that given by his brother and father. He also testified that his family had kept a garden on the Land in question from the 1970s through the present. He did not recall any rose of sharon bushes or other nursery plantings on the Land.

Ed Shaerer: Mr. Shaerer performed a survey for Mr. James Orange in April of 2000. This survey was entered into evidence as trial Exhibit 15. The survey, conducted by the usual means, shows that the Land in question is Orange property and that some of the old buildings, allegedly build by Mr. Oliver, are encroaching on the edge of that Land. Mr. Shaerer also testified that he ventured into some of these old buildings and found certain property, including old signs and tools.

At the close of all testimony, the trial court made the following relevant statements:

> ...when Mr. Shaerer performed the only survey in this case and he located the line, the line would fall squarely within the area that Mr. Orange was operating his bulldozer.
> But let's go further because there are some issues now then with regard to adverse possession and I want to address those. There seems to be no dispute that a certain number of existing buildings were built and used and still contained artifacts and items that belong to [Plaintiffs] in this case, and had been there for many, many years. In fact, their exact original date of origin is not clearly defined, but it certainly would go back into more than 30 or 40 years ago, and they have, although not been actively used, they still act as storage buildings for the benefit of the Plaintiffs in this case....
> What's uncertain is about the use of the rest of the land, because there were a number of fences that were built, some that were referred to as cross fences and some that were referred [to] as line fences....
> And so I think the evidence is fairly clear that in this case at best the adverse possession of property would be established by these buildings and the continued use of these buildings, although there was some testimony about putting out some bushes in an area that was grown up, that's not an act that is open and notorious that would put someone on notice of a claim in a grown up area. And I think that certainly there's enough testimony on behalf of Mr. Orange and his predecessors in title, they used some of this area themselves, including, I think they both said they used the outhouse, and I think it was last used in 1970 or 1971 by anyone, so the use of that has been long since abandoned and any other claim or use, I think that it hasn't even been mowed by Plaintiffs in this case in over six years.
> So under the circumstances, I think any claim that might have ripened into a use by adverse possession has been abandoned, because

the testimony was clear that Mr. Oliver, who was the one that ran cattle and used that area has been dead for over 20 years and it was probably a year before his death, according to the testimony, that was last used by him for livestock or chickens or anything else like that, so it'd been 21 years or more...after his death that it had been abandoned and not used, so I find then that there has been an abandonment of any claim, any claim that could have been asserted to adverse possession would have had to have been asserted without the benefit of a claim to title, because there is no legal title in the names of the Plaintiffs to this area in question.

But I do find that a continued use has existed with regard to these buildings...and the area would have to include sufficient territory to allow the Plaintiffs to be able to gain access to that building from all sides and also to be able to conduct repairs, so I would say that with regard to that there ought to be at least a five foot barrier around that region to gain access and do repairs...

Before turning to Appellant's issues, we first observe that since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error or law. *See* Tenn. R. App. P. 13(d).

**Whether the Trial Court erred in finding that
if not obtained under color of title, Appellant
had not acquired the subject property by
prescription or adverse possession.**

To establish title by adverse possession, there must be an occupation of the property under a claim of right or title which is open, actual, continuous, exclusive, adverse and notorious for the prescriptive period of 20 years. *Catlett v. Whaley*, 731 S.W.2d 544, 546 (Tenn. Ct. App.1987). *See also Tidwell v. Van Deventer*, 686 S.W.2d 899 (Tenn. Ct. App.1984). Adverse possession must be just that–adverse. This Court has held that, in order to be adverse, possession "must be of such a character as to leave no doubt of claim of ownership by adverse possession and to give notice to the public of the possession and the claim." *Blankenship v. Blankenship*, 658 S.W.2d 125, 127 (Tenn. Ct. App.1983). We have also held that the party claiming ownership by adverse possession "must sustain the proposition that the possession was in fact adverse to the true owner." *Bynum v. Hollowell*, 656 S.W.2d 400, 403 (Tenn. Ct. App.1983). Under Tennessee law, the burden of establishing by clear and positive proof such adverse possession is on the adverse possessor. *See Whitworth v. Hutchison*, 731 S.W.2d 915, 917 (Tenn. Ct. App.1986) (citing *Jones v. Coal Creek Mining and Mfg. Co.*, 180 S.W. 991 (Tenn. 1915); *Davis v. Louisville & N.R. Co..*, 244 S.W. 483 (Tenn. 1922)). This rule applies to both the length of time and the character of possession. *Id*. Evidence of adverse possession is strictly construed and any presumption is in favor of the holder of the legal title. *Moore v. Brannan*, 304 S.W.2d 660, 667 (Tenn. Ct. App.1959).

In the instant case, the evidence clearly shows that the Oranges are the holders of legal title to the Land in question. The burden of proving adverse possession is, therefore, on the Sweetons.

There was conflicting testimony concerning the location and origin of the fence, as well as the use and occupancy of the disputed properties. The trial court was able to observe the manner and demeanor of the witnesses as they testified and gave to each witness's testimony the credibility it deserved. The trial court's determination of credibility is given great weight by the appellate court. *See Haverlah v. Memphis Aviation, Inc.*, 674 S.W.2d 297, 302 (Tenn. Ct. App. 1986). Having reviewed the entire record in this case, we find that the evidence concerning adverse possession supports the trial court's findings. Specifically, the Sweeton's have met their burden of proof on the issue of adverse possession only to the extent that the old buildings, encroaching on the Orange property line, have been used as storage for the prescribed period of 20 years. The trial court was, therefore, correct in awarding the Sweetons these buildings as well as five feet around them for ingress and egress. Consequently, we affirm the Order of the trial court on the issue of adverse possession.

**Whether the Trial Court erred in finding that
if the subject property had in fact been acquired
adversely or by prescription that the subject
property had subsequently been abandoned.**

From our review of the record, the evidence does not support the Sweeton claim of adverse possession to the entirety of the Land in question. The evidence does not preponderate against the trial court's finding that only the portions of the Land containing the old storage buildings and the five feet surrounding those buildings was obtained by the Sweetons through adverse possession, see discussion *supra*. Any other portions of the Land in question are clearly the Oranges by virtue of title. Because there is no finding that the remaining portions of the Land were obtained through adverse possession, the issue of whether the Sweetons subsequently abandoned property, which they never adversely possessed, is moot. However, even if we allow *arguendo* that Mr. Oliver's use of the Land as range for his animals met the criteria for adverse possession, from the evidence before us, we must nonetheless find with the trial court that any such use was abandoned over twenty years ago when Mr. Oliver became infirmed and unable to use the Land.

For the foregoing reasons, we affirm the Order of the trial court. Costs of this appeal are assessed to the Appellant, Ginger Sweeton, and her surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.