IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Submitted on Briefs September 12, 2005

## ENVISION PROPERTIES, LLC v. PAUL RICHARD JOHNSON, ET AL.

**Appeal from the Chancery Court for Hamilton County**
**No. 04-0545     W. Frank Brown, III, Chancellor**

_____

**No. E2005-00634-COA-R3-CV - FILED OCTOBER 31, 2005**

_____

This is a suit to quiet title to real property.  The issue presented is whether the trial court correctly decreed that any legal or equitable interest of Paul Richard Johnson in the real property purchased by Envision Properties, LLC was extinguished by operation of the doctrine of adverse possession. Based on the stipulated proof, we hold that there was not clear and positive proof of adverse possession sufficient to constitute an ouster of a co-tenant.  Therefore, Paul Richard Johnson has an undivided one-fifth interest in the property.  The judgment of the trial court is reversed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed;**
**Case Remanded**

SHARON G. LEE, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

Glenn T. McColpin, Chattanooga, Tennessee, for the Appellant, Paul Richard Johnson.

Lynn Perry, Cleveland, Tennessee, for the Appellee, Envision Properties, LLC.

# OPINION

### I. Background and Stipulated Facts

Envision Properties, LLC ("Envision") purchased the property at issue, approximately three acres located on the west side of Hunter Road in Chattanooga, in 2003 for a price of $21,000. Following its purchase of the property, Envision requested a change in the property's zoning classification. It was during this process, according to the complaint filed in this case, that Paul Richard Johnson contacted the Regional Planning Agency and claimed that he owned an undivided interest in Envision's real property.  Envision filed this action against Paul Richard Johnson to quiet title to the property.

The parties filed a joint exhibit list, consisting of the relevant deeds in the chain of title of the property, and a stipulation of facts and issues of law. No witnesses were called to testify at the trial.

The real property at issue was originally a part of a sixteen-acre tract of land conveyed to Mike D. Johnson and his wife, Amanda Johnson, by a warranty deed recorded in 1935.

The construction of Hunter Road divided this parcel, leaving the larger portion of the property on the east side of the road. Mike and Amanda Johnson died by 1955 (the exact date is not in the record), leaving their five children as heirs at law: James T. Johnson, Susie Johnson Perkins, Elijah Johnson, Carrow Johnson, and Pracey Hilton Johnson.

On January 17, 1955, James T. Johnson, Elijah Johnson, and Carrow Johnson executed a warranty deed to Susie Johnson Perkins for the stated purpose of dividing their parents' real property as fairly and equally as possible. The typewritten portion of the warranty deed includes the name and signature line of Pracey Johnson as additional grantor, but Pracey Johnson did not sign the deed. The warranty deed "conveyed a portion of the original 16 acre parcel and conveyed the four (4) acres, more or less, located on the West side of Hunter Road."

By warranty deed recorded on September 22, 1958, Susie Johnson Perkins conveyed the property at issue in this case, an approximately three-acre tract of land on the west side of Hunter Road, to Cleslie B. Foster and wife, Mary Foster. The Fosters are the predecessors in title to Envision.

On November 10, 1961, James T. Johnson, Susie Johnson Perkins, and Elijah Johnson executed a warranty deed to L.O. Rogers and wife Nora Rogers. The warranty deed conveyed a portion of the original Mike D. Johnson property on the east side of Hunter Road to Mr. and Mrs. Rogers. The deed, like the 1958 Foster deed, lists Pracey Johnson as an additional grantor, but Pracey Johnson did not sign this deed either. It appears that by the time of the 1961 Rogers deed, Carrow Johnson had died.

On August 16, 1968, Pracey Johnson executed a warranty deed to Paul Richard Johnson, conveying a portion of his interest in the original Mike D. Johnson property. The warranty deed states as follows in relevant part:

> I, PRACEY (PRECY) JOHNSON, covenanting that I own an interest in the hereinafter described real estate as tenant in common with others and no division of the same has been made by parol or otherwise, do hereby sell, release, transfer and convey unto PAUL RICHARD JOHNSON, all my right, title and interest, being a one fourth interest to my best knowledge and belief, in and to the following described real estate. . .:

Said tract of land contains sixteen (16) acres, more or less. . . .Also conveyed is the four acres, more or less, located on the west side of the Hunter Road in the above described sixteen acres, more or less. EXCEPT interest in part of property conveyed Cleslie B. Foster and wife by instrument recorded in Book 1320, page 289, in the Register's office of Hamilton County, Tennessee, and EXCEPT interest in part of property conveyed to L.O. Rogers and wife by instrument recorded in Book 1627, page 452, in said Register's office.[1]

On March 20, 1972, Pracey Johnson executed a quitclaim deed to Paul Richard Johnson, transferring his interest in the Foster (now Envision) and Rogers tracts. The quitclaim deed was duly recorded on May 22, 1972.

Shortly after receiving the warranty deed in 1958 from Susie Johnson Perkins, the Fosters constructed a residence on the three-acre tract at issue. They lived in the residence until Cleslie Foster died in June of 1963. Mary Foster lived in the residence a short while thereafter, then moved to Washington, D.C., at which time the Fosters' daughter, Evelyn Grace Foster Smith, occupied the residence. Evelyn Smith and her husband Nathaniel Smith lived in the residence until Evelyn's death in 1988. Carolyn Smith Thomas, the daughter of Evelyn and Nathaniel Smith, continued to live in the Foster residence for a time after her father moved out. At some point not precisely revealed in the record, the Foster residence was abandoned, apparently sometime in the early 1990s.[2]

At the time of the conveyance to Envision, the Foster residence was in poor shape, and remained so at the time of the parties' stipulation of facts. The floors have fallen in, there are holes in the roof and the house has no windows.

Paul Richard Johnson has lived near the Foster residence for more than 20 years. At the time of the stipulation, he lived on the east side of Hunter Road, apparently on a portion of the original Mike D. Johnson tract. Neither Paul Richard Johnson nor Pracey Johnson have paid taxes or contributed to maintenance of the property at issue for more than 20 years.

The parties stipulated that Paul Richard Johnson's interest in the property, if any, was an undivided one-fifth interest. The parties further stipulated to the following facts:

---

[1]The Foster tract excepted in this deed is the parcel of land at issue in this case. The Rogers tract referred to is part of the original sixteen-acre tract owned by Mike and Amanda Johnson, but it is not in dispute here.

[2]Paragraph 20 of the filed "stipulation of fact and issues of law" states: "The Foster residence has remained vacant for at least_____ years. **Note to Glenn- can we stipulate that it was vacant since before the big snow of 1993 that knocked all the trees over?**"

-3-

. . .[T]he children of Cleslie and Mary Foster and the Defendant herein [Paul Richard Johnson] are cousins, although there may be some discrepancy as to the particular degree of kinship.

. . .[E]ven though Paul Richard Johnson and Theodore and Earl Foster have known of each other for many years, they have not socialized and that somewhere between 2 and 3 conversations have ever taken place between Theodore Foster and Paul Richard Johnson.

. . .[I]f called, Theodore Foster would testify that Paul Richard Johnson never specifically mentioned any claim in the property at issue in this cause and on only one occasion asked generally if Mr. Foster would like to purchase some unidentified property, to which Mr. Foster replied "No."

. . .[I]f called, Paul Richard Johnson would testify that he and Theodore had a specific conversation years ago regarding the Foster family purchasing his interest in the real estate at issue. . .

. . .[Envision] intends to rely upon the other property received by Pracey Johnson as his share of the estate of his parents; the inaction of Pracey (Precy) Johnson and [Paul Richard Johnson], from 1955 through 2003, (i.e.: nonpayment of taxes, no contribution to maintenance, allowing Fosters to build and live in house, not filing suit, etc.); and the acknowledgment by Pracey Johnson in [his deeds to Paul Richard Johnson] that he was aware of the Foster claim to title, and initial exception of same from his warranted conveyance, as grounds to quiet title in [Envision].

. . .[Paul RichardJohnson] intends to assert that the claimed inaction by [him] and his predecessor in title, Pracey Johnson, are ineffective against a tenant in common, and require the Court to find a 1/5th undivided interest in the real property in favor of Paul Richard Johnson. The parties stipulate that [Paul Richard Johnson] also intends to assert that he had at least one telephone conversation with Theodore Foster, the oldest son of Cleslie B. and Mary Foster, wherein Mr. Foster allegedly acknowledged [Paul Richard Johnson's] ownership interest, and at least one meeting with a grandchild of Cleslie and Mary Foster, wherein the grandchild allegedly requested a deed from Mr. Johnson "to clear this up," and will generally allege that the Foster and Johnson families have been knowledgeable co-tenants for many years with permissive possession to Foster in

exchange for payment of taxes and upkeep due to the family relationship.

A hearing was held on January 24, 2005, at which the only proof presented was the filed stipulation of facts and the joint exhibit list. After hearing arguments of counsel, the trial court made the following oral statements from the bench:

> . . .[T]his case really is one that is governed by the doctrine of adverse possession. The way I looked at it is that the owner of the property that we are now looking at, that Suzie Perkins owned a minimum of four-fifths of the property. She obviously thought she owned it all, but . . .she transferred this property by warranty deed. The deed was recorded on September 22nd, 1958, to Mr. and Mrs. Foster, Cleslie B. Foster and wife, Mary. The Court's interpretation of that transfer is that when she did that, it was a constructive eviction of the cotenant, if any, in the interest of [Pracey] Johnson.
>
> *        *        *
>
> So it's the Court's conclusion that Mr. [Pracey] Johnson either, A, was ousted of his interest in the property, or that there was a constructive ouster of him when Susie Perkins sold the property to the Fosters in 1958, and from the recording of the deed, which was notice to the world, Mr. [Pracey] Johnson was on notice of the Fosters' purchase of the property, occupation of the property, improvement of the property, and the Fosters maintained that possession active and constructive. They built the house without any contribution from any of the other alleged cotenants, they paid the taxes, they maintained the house, again, all without any contribution. And therefore, from 1958 to 2003, when the Foster heirs sold the property to [Envision], it was far more than 20 years. Therefore, the Court holds that the property was vested in the Foster family by adverse possession.

The trial court made no findings of fact in its final judgment, stating only that "the Court was of the opinion that title to the real property in question should be quieted in the Plaintiff [Envision]." The trial court did not incorporate its oral memorandum opinion into its final judgment. Paul Richard Johnson appealed the trial court's decision.

## II. Issue Presented

The sole issue in this appeal is whether the trial court erred in ruling that Paul Richard Johnson's legal or equitable interest in the property was extinguished by the adverse possession by the Foster family, pursuant to Tenn. Code Ann. § 28-2-101.

### III. Standard of Review

We review the trial court's findings of fact *de novo* upon the record of the proceedings below, with a presumption of correctness "unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d); *see also Hass v. Knighton*, 676 S.W.2d 554 (Tenn. 1984). Where the trial court does not make findings of fact, there is no presumption of correctness and we "must conduct our own independent review of the record to determine where the preponderance of the evidence lies." *Brooks v. Brooks,* 992 S.W.2d 403, 405 (Tenn.1999). There is no presumption of correctness with regard to the trial court's conclusions of law, and those conclusions are reviewed *de novo*. *Jahn v. Jahn*, 932 S.W.2d 939 (Tenn. Ct. App. 1996).

### IV. Adverse Possession

We begin our analysis by reviewing these pertinent facts: Pracey Johnson, his sister, Susie Perkins, and his three brothers each inherited a one-fifth interest in the subject property; in 1955, Pracey Johnson's three brothers conveyed their three-fifths interest in the property to Susie Perkins; in 1958, Susie Perkins conveyed her interest in the property to the Fosters; in 2003, the Foster heirs conveyed their interest in the property to Envision; Pracey Johnson did not join in any of these conveyances; and in 1972 Pracey Johnson quitclaimed his interest in the property to Paul Richard Johnson.

The question presented is whether Paul Richard Johnson has a one-fifth interest in the property by virtue of the quitclaim deed from Pracey Johnson *or* whether Pracey Johnson's one-fifth interest in the property was extinguished by adverse possession of the property by his co-tenants, Susie Perkins and the Fosters.

The appellant, Envision, argues that the trial court correctly held that Paul Richard Johnson was constructively ousted at the time of the 1958 warranty deed from Perkins to the Fosters, and that the Fosters obtained absolute title to the property by adversely possessing the property for more than seven years.

The appellee, Paul Richard Johnson, argues that the Fosters' possession was not adverse to his interest because it was by his permission and pursuant to agreement between him and the Foster family. Mr. Johnson argues that there was no clear and positive proof of his actual ouster, and therefore the trial court erred in holding his one-fifth interest extinguished by adverse possession.

Tenn. Code Ann. §28-2-101 provides the following regarding the seven-year period of adverse possession under color of title:

> (a) Any person having had, either personally or through those whom
>
> that person's claim arises, individually or through whom a person claims, seven (7) years' adverse possession of any lands, tenements, or hereditaments, granted by this state or the state of North Carolina, holding by conveyance, devise, grant, or other assurance of title,

purporting to convey an estate in fee, without any claim by action at law or in equity commenced within that time and effectually prosecuted against such person, is vested with a good and indefeasible title in fee to the land described in such person's assurance of title.

(b) No title shall be vested by virtue of such adverse possession, unless such conveyance, devise, grant, or other assurance of title shall have been recorded in the register's office for the county or counties in which the land lies during the full term of such seven (7) years' adverse possession.

The Supreme Court of Tennessee has long and consistently held that "this doctrine of adverse possession is to be taken strictly and must be made out by clear and positive proof, and not by inference, every presumption being in favor of a possession in subordination to the title of the true owner." *Heirs of Marr v. Gilliam,* 1860 WL 3085 (Tenn.) at *4, 41 Tenn. (1 Cold.) 488, 500 (1860); *Drewery v. Nelms,* 177 S.W. 946, 947-48 (Tenn. 1915).

In this case it is undisputed that Pracey Johnson, one of the heirs at law with his siblings, James T. Johnson, Susie Johnson Perkins, Elijah Johnson, and Carrow Johnson, held the property as a tenant in common with them. The Supreme Court stated as follows regarding the doctrine of adverse possession as between tenants in common:

Tenants in common are jointly seized of the whole estate, each having an equal right of entry and possession, and the possession of one is regarded as the possession of all until a disseizin of the others by actual ouster.

\*   \*   \*

'An ouster, in the law of tenancy in common, is the wrongful dispossession or exclusion by one tenant in common of his cotenant or cotenants from the common property of which they are entitled to possession. It differs from the acts constituting an ouster in other cases only in the evidence by which it may be established.' 86 C.J.S., Tenancy in Common, § 27, p. 386. The authorities generally in this State support this statement. *Certainly to constitute an ouster of one tenant in common the evidence that there has been an ouster must be much stronger as between these tenants in common than as between mere strangers. When one attempts to set up an ouster as between tenants in common the evidence should be viewed by the court most strongly against that person who attempts to set up an ouster and in favor of the tenant in common who makes no such attempt.*

*Moore v. Cole,* 289 S.W.2d 695, 697,699 (Tenn. 1956)(emphasis added).

As this court has recently noted, "[a]n ouster does not necessarily mean a physical expulsion of one party by another, but it requires the party claiming adversely to perform some act that makes it clear to his cotenant that she is being excluded from ownership." *Nesmith v. Alsup,* No. 01A01-9809-CH00509, 1999 WL 557620 at *4 (Tenn. Ct. App. M.S., filed Aug. 2, 1999). The Tennessee Supreme Court has explained the concept of "ouster" as follows:

> This ouster by one tenant in common against his cotenant may occur,
>
> but it takes something more than an appropriation of the rents without an accounting. The mere silent, sole occupation by one of the entire property, though he be claiming the whole estate, and appropriating the whole rents, without an accounting to or claim by the others, without notice to his cotenant that his possession is adverse, and unaccompanied by some act which can amount to an exclusion and ouster of the cotenant, cannot be construed into an adverse possession. This ouster and exclusion may be effected by taking possession and affording actual notice of a claim of sole ownership or other positive and unequivocal act that must by its nature put the other cotenants upon notice that they are excluded from the possession.

*Drewery v. Nelms,* 177 S.W. 946, 948 (Tenn. 1915).

Where a party bases his or her title or right to possession of property upon adverse possession, he or she bears the burden of sustaining that contention by clear and positive proof, and this rule applies to both the length of time and the character of possession. *Whitworth v. Hutchinson*, 731 S.W.2d 915, 917 (Tenn. Ct. App. 1986); *Tipton v. Smith,* 593 S.W.2d 298, 300 (Tenn. Ct. App. 1979); *Tidwell v. Van Deventer,* 686 S.W.2d 899, 902 (Tenn. Ct. App. 1984).

It has been frequently stated that in order to prevail on an adverse possession claim, "there must be *exclusive*, actual, *adverse*, continuous, open and notorious possession for the entire prescriptive period, under a claim of right or title to the property." *Tidwell,* 686 S.W.2d at 902; *Nesmith*, 1999 WL 557620 at *4 (Emphasis added). The *Nesmith* court further noted that "[t]he requirements that the possession be both exclusive and adverse are particularly difficult to establish when a cotenancy is involved." *Id.,*1999 WL 557620 at *4. So it is in the present case.

Taking the above standards into consideration, we are of the opinion that Envision failed to establish that the Fosters held the property at issue exclusively and adversely. It is stipulated that Paul Richard Johnson would testify that the Fosters built on and occupied the property "with permissive possession" in exchange for payment of taxes and maintenance. Further supporting this assertion is the underlying family relationship between Paul Richard Johnson and the Foster family; he is a cousin to the children of Cleslie and Mary Foster, and his brief asserts that "his mother was a Foster." Envision failed to provide any clear and positive proof rebutting the evidence that the

Fosters' possession of the property was permissive and based upon an understanding between the Johnson and Foster families.

Envision has likewise failed to demonstrate by clear and positive proof any openly hostile act that would tend to notify Paul Richard Johnson that the Fosters intended to claim an interest the entire property, to the exclusion of his one-fifth interest. The Supreme Court, in *Moore v. Cole,* set forth the following pertinent rule:

> The taking and recording of a deed by one tenant in common from a third person will not have any effect towards constituting such an ouster of his cotenant as would lay the foundation for the commencement of an adverse possession against him, unless accompanied and followed by a hostile claim of which the cotenant had knowledge, and by acts of possession *not only inconsistent with, but in exclusion of, the continuing right of the cotenant in the premises.*

*Moore,* 289 S.W.2d at 699 (quoting 1 Am.Jur. 826, §55)(emphasis added); *accord Denton v. Denton,* 627 S.W.2d 124,128 (Tenn. Ct. App. 1981). *See also Drewery v. Nelms*, 177 S.W. 946, 948 (Tenn. 1915), a factually similar case wherein the Court held "[t]he lapse of time and failure to account for rents are fully explained by positive testimony [of permissive use], and this overcomes any presumption of adverse holding."

Envision also argues that it established absolute title by operation of the doctrine of prescriptive title, which requires a showing of exclusive and uninterrupted adverse possession for 20 or more years. *See, e.g., Drewery,* 177 S.W. at 948. In light of our holding that Envision failed to show by clear and positive proof that the Fosters' possession was adverse and exclusive, this argument must also fail.

### IV. Conclusion

For the aforementioned reasons, the judgment of the trial court is reversed, and the case remanded for such further action as may be necessary, consistent with this opinion. Costs on appeal are assessed to the Appellee, Envision Properties, LLC.

_____
SHARON G. LEE, JUDGE